448 So.2d 841 (1984)
Larry D. AVERY, Plaintiff-Appellant,
v.
Aaron Purvis NASH, Defendant-Appellee.
No. 16103-CA.
Court of Appeal of Louisiana, Second Circuit.
March 26, 1984.
*842 Culpepper, Teat, Caldwell & Avery by Bobby L. Culpepper, Jonesboro, for plaintiff-appellant.
Robert W. Levy, Ruston, for defendant-appellee.
Before PRICE, HALL and NORRIS, JJ.
HALL, Judge.
This suit originated as a possessory action filed in March 1982 by Larry D. Avery against his neighboring property owner, Aaron Purvis Nash, and involves a strip of land located on the east side of the property to which Nash has record title, containing.19 acres and measuring 913.4 feet in length north and south and from 2 to 11 feet in width. Alleging that he had been in possession of the property for more than one year and that Nash had disturbed his possession by cutting a portion of a fence erected by him, Avery prayed to be maintained in possession of the disputed property. Nash filed an answer and reconventional demand denying Avery's allegations and asserting ownership of the disputed strip. Nash alleged that he acquired the property by inheritance from his parents who had owned and possessed it since 1930 and he prayed for judgment recognizing his ownership of the disputed property, thereby converting the action into a petitory action. LSA-C.C.P. Art. 3657.
After trial the district court held that Nash established a prescriptive title to the ideal boundary between the respective properties by virtue of possession under color of title and that Avery failed to establish a 30-year prescriptive title to the disputed strip of land. From a judgment rejecting Avery's demands and recognizing the boundary line between the properties to be the ideal boundary as established by a survey filed into evidence, Avery appealed. For reasons expressed in this opinion, the judgment of the district court is affirmed.
On appeal, the appellant specifies that the trial court erred (1) in finding that Nash sustained his burden of proving ownership by title or acquisitive prescription; (2) in holding that Nash's possession was sufficient to establish a prescriptive title considering the fact that Avery had civil or corporeal possession for periods of 10 and 30 years; (3) in concluding that Avery could not tack the possession of his predecessors in title onto his own possession; and (4) in recognizing the boundary line between the properties to be the ideal boundary as established by the survey.
By asserting ownership in answer to Avery's possessory action, Nash converted the suit into a petitory action and judicially confessed Avery's possession. LSA-C.C.P. Art. 3657; Suire v. Primeaux, 363 So.2d 963 (La.App.3d Cir.1978); Lemoine v. Couvillon, 321 So.2d 37 (La.App.3d Cir. 1975).
Nash, as plaintiff in a petitory action against a defendant in possession of *843 disputed property, in order to obtain judgment recognizing his ownership of the disputed property, is required to prove that he acquired ownership from a previous owner or by acquisitive prescription. LSA-C.C. Arts. 531 and 532; LSA-C.C.P. Art. 3653. Without regard for the character or quality of Avery's title, Nash must be able to trace his title back to the sovereign or to a common author, or prove that he has acquired ownership of the disputed strip by acquisitive prescription. See Weaver v. Hailey, 416 So.2d 311 (La.App.3d Cir.1982), confirming the viability of the rule of Pure Oil Company v. Skinner, 294 So.2d 797 (La.1974), after the adoption of LSA-C.C. Arts. 531 and 532 by Act 180 of 1979, effective January 1, 1980, and the amendment of LSA-C.C.P. Art. 3653 by Act 256 of 1981. See also Raymond v. Simmons, 424 So.2d 544 (La.App. 5th Cir.1982) and Whitley v. Texaco, Inc., 434 So.2d 96 (La. App. 5th Cir.1983).
Nash makes no claim that he established title good against the world or acquisition from a common author in title. The chain of title introduced by him does not stem from the sovereign or a common author and there is also a break in the chain of conveyances. Consequently, if Nash is to prevail he must rely on proof of acquisitive prescription. We conclude, as did the trial court, that Nash established ownership of the disputed strip by 10 years acquisitive prescription based on possession, corporeal, constructive and civil, to the limits of the property described in the deed by which his parents purported to acquire title, which title devolved to Nash by inheritance and a partition with his co-heirs.
The evidence establishes that after obtaining a deed to the property from the record owner, the Nash family moved onto the tract which includes the disputed strip in 1930 and began possession of all of the property described in their title. According to Nash, who was 16 years old at the time, there was at that point in time a 3-strand barbed wire fence along the ideal boundary between the Nash tract and the tract which Avery later acquired. A survey performed by a surveyor named Crowson one or two years after the Nash family moved onto the tract confirmed the barbed wire fence as the ideal boundary.
From 1930 until approximately 1935 the Nash family cultivated their property up to the fence along the ideal boundary. At that time, in connection with their plans to begin running cattle on the property, they erected a combination net and barbed wire fence on their property west of the old barbed wire fence then existing along the ideal boundary. Construction of the net and barbed wire fence was required because the fence along the boundary was in a state of disrepair. Because a thicket of underbrush and trees had grown up around the boundary fence, it was decided as a matter of convenience to place the net and barbed wire fence slightly over onto their property at the edge of the cultivated area rather than to attempt to clear the thicket and rebuild the old fence.
Nash testified that it was not his family's intention to abandon the small portion of their property between the two fence lines or to have the new net and barbed wire fence mark the boundary. After 1935, until the time of this dispute, the Nash family allowed the strip outside of the net and barbed wire fence to remain idle, except that Nash did cut some fence posts from timber growing on that strip and crossed it while hunting on his property. The Nash family continued to actively and corporeally possess the balance of their tract of land.
Avery acquired approximately 30 acres east of the Nash property in 1970, and constructed a new fence slightly east of and along the line of the net and barbed wire fence, which he assumed to be the boundary of his property. Avery bulldozed and cleared his property east of the fence, which was wooded until that time, and thereafter used it for pasture.
Although there was testimony by witnesses on behalf of Avery disputing the existence of the old 3-strand barbed wire fence along the ideal boundary line, the preponderance of the evidence is that such *844 a fence existed at the time the Nash family moved onto the property in 1930. The evidence presented by Avery as to possession prior to 1970 of the property east of the net and barbed wire fence built by the Nash family in about 1935 was meager. The testimony showed that the previous owner, a Mr. Whitten, had allowed the tract to grow up in timber. There was testimony that a Mr. Pepper, who owned a tract which adjoined the Nash and Whitten properties, had run some cattle on the Whitten property for an unspecified period of time after 1946 in the 1950s or 1960s and that he had performed some maintenance and repair work on the net and barbed wire fence.
In 1981 the Nash property was surveyed by A.D. Hullet, Jr., in connection with a partition of the Nash property among family members. After the survey and after Nash acquired full title to a part of the Nash property in the partition, he cut the fence which had been built by Avery with the intent of locating a new fence on the ideal boundary line. This litigation ensued.
Ownership of an immovable may be acquired by 10 years prescription when the possessor has been in good faith and held by a just title during that time. LSA-C.C. Art. 3474.[1] Four conditions must be proved, that is, good faith on the part of the possessor, a legal title sufficient to transfer the property, possession during the time required by law, and an object which may be acquired by prescription. LSA-C.C. Art. 3479. The possession must be continuous and uninterrupted, peaceable, public, and unequivocal. Civil possession shall suffice, if preceded by corporeal possession. LSA-C.C. Art. 3487. The possessor may tack onto his own possession that of his author in title. LSA-C.C. Art. 3493. Particularly pertinent to this case, when a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits. LSA-C.C. Art. 3498.
Essentials of possession are the intention of possessing as owner and the corporeal possession of the thing. LSA-C.C. Art. 3436. It is sufficient if one enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries. LSA-C.C. Art. 3437. When a person has once acquired possession of a thing by the corporeal detention of it, the intention which he has of possessing suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody. LSA-C.C. Art. 3442. This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly; so that, although a person may have abandoned the cultivation of his estate, he shall not therefore be presumed to have abandoned the possession, but shall be presumed on the contrary to have the intention of retaining it, and shall retain it in fact. LSA-C.C. Art. 3443. Possession is "civil" when a person ceases to reside on the land which he occupied, but without intending to abandon the possession. LSA-C.C. Art. 3429. Civil possession is the detention of a thing by virtue of just title, and under the conviction of possessing as owner. LSA-C.C. Art. 3431.
In Whitley v. Texaco, Inc., supra, the court held:
"... Actual possession of part of the tract of land, with title to the whole, and intent to possess the whole, is possession of the whole; and when thus commenced, such possession is continued by a mere civil possession unless ousted by a counter actual possession of one year....
"When a person has once acquired actual possession, his intention may serve to preserve the possession, though he may have ceased to have the thing in actual custody; and the intention is always supposed where a contrary intention does not appear....
"A possessor does not lose possession against his consent unless he is forcibly expelled or unless the disturber usurps *845 possession and holds it for more than a year...."
That Nash had just title and was in good faith is not disputed. Good faith is always presumed. LSA-C.C. Art. 3481. The Nash family exercised corporeal possession of the whole property to the limits of the boundaries described in their title from 1930 to 1935, when they built the fence inside of their boundary for convenience. After 1935, they continued to exercise corporeal possession of their property, possession of the strip outside the fence being constructive and civil. The evidence establishes that the Nashes did not abandon the disputed strip and establishes their intent to exercise possession to the full extent of their title, including the disputed strip. This possession continued uninterrupted until 1970, long after the accrual in 1940 of 10 years acquisitive prescription and acquisition of ownership of the entire property included in their title.
Avery's possession of the disputed strip outside of the fence for 10 or 11 years commencing in 1970 when he built a new fence, did not serve to divest the Nash family of ownership. Since the strip is not contained within Avery's title, in order for him to prevail he must show that he and his ancestors in title possessed adversely and as owners beyond their title to a visible boundary continuously for 30 years in accordance with LSA-C.C. Art. 794. Avery's possession was for only 10 or 11 years and the meager evidence of possession by Avery's ancestors in title is insufficient to establish possession of the strip of land sufficient to support 30 years acquisitive prescription.
The trial court was correct in fixing the boundary along the ideal boundary line in accordance with Nash's title, thereby implicitly recognizing Nash's ownership of the strip of land lying between the fence and the ideal boundary line.
For the reasons assigned, the judgment of the district court is affirmed at appellant's costs.
Affirmed.
NOTES
[1] All citations in this opinion are to the Civil Code articles on possession and prescription prior to their revision by Act 187 of 1982, effective January 1, 1983.