471 So.2d 816 (1985)
Carl E. NUGENT, et ux., Plaintiffs-Appellants,
v.
Howard FRANKS, et al., Defendants-Appellees.
No. 16906-CA.
Court of Appeal of Louisiana, Second Circuit.
June 12, 1985.
Rehearing Denied July 12, 1985.
*818 Dimos, Brown, Erskine, Burkett & Smith by Donald R. Brown, Monroe, for plaintiffs-appellants.
William R. Coenen, Jr., Rayville, for defendants-appellees.
Before HALL, SEXTON and LINDSAY, JJ.
HALL, Judge.
Carl E. and Nancy Beckley Nugent, referred to hereafter as Nugent, brought an action against Howard Franks and James Ruddell, Jr., referred to hereafter as Franks and Ruddell, seeking damages for trespass, an injunction, and to be maintained in possession of certain property in Caldwell Parish, allegedly in Nugent's possession. In response, Franks and Ruddell filed a petitory action, claiming ownership by title of the property in dispute and seeking recognition of that ownership, and also seeking trespass damages and an injunction. Nugent answered the petitory action denying that Franks and Ruddell had title or ownership of the disputed tract of land and, alternatively, pleading ownership of the property in dispute by acquisitive prescription under LSA-C.C. Arts. 794 and 3486.
The trial of the rule for a preliminary injunction resulted in Franks and Ruddell being enjoined from interfering with Nugent's possession of the disputed tract. Nugent's trespass action and Franks and Ruddell's petitory action were consolidated for trial on the merits. The trial court awarded Nugent general damages of $750.00 in the trespass action and found that Franks and Ruddell had proven record title to the disputed property. Additionally, the trial court found that Nugent had not established ownership of the disputed property by 30 year acquisitive prescription. Judgment was rendered awarding Nugent $750.00 damages and recognizing Franks and Ruddell as the owners of the disputed property.
Nugent appealed, contending that the trial court erred in its assessment of damages for the trespass action in that the trial court failed to award damages for embarrassment, humiliation, and mental anguish. *819 Additionally, Nugent contends that the trial court erred in finding that Franks and Ruddell had valid record title to the property in dispute, and in finding that Nugent did not prove a valid prescriptive title to the disputed property. Nugent also contends that the trial court erroneously assessed half the court costs against him.
Franks and Ruddell answered the appeal contending that the trial court erred in awarding damages to Nugent in the trespass action. Franks and Ruddell also contend that the trial court erred in assessing them with one-half of the court costs, including the expert witness fee of the surveyor.
We affirm the award of trespass damages and assessment of court costs, but otherwise reverse the judgment of the district court, recognizing Nugent's ownership of most of the property in dispute and his right to possession of the remainder.

BACKGROUND FACTS
Nugent is the record owner of a tract of land described as the north half of Lot 3 and a portion of the north half of Lot 4, Section 14, Township 11 North, Range 5 East, Caldwell Parish, Louisiana, by virtue of a 1964 deed from E.B. Rushing. Franks and Ruddell are the record owners of a tract of land described as the south half of Lots 3 and 4, by virtue of a 1983 deed from Tommie T. Sanson, et al. Both parties trace their title back to a common ancestor, Ucal and Claracy Cottingham, who conveyed the respective properties by act of donation in 1883. In serious dispute is the question of whether the act of donation effectively conveyed the disputed property to the ancestor in title of Franks and Ruddell, plaintiffs in the petitory action, as will be discussed in more detail later in this opinion.
Governmental Lots 3 and 4 comprise the fractional northwest quarter of Section 14, which is bounded on the west by the Ouachita River. A copy of the government survey is attached to this opinion as Appendix A.
The ideal boundary line between the two tracts is shown on a survey prepared by David Parker and filed into evidence in this proceeding, and is a line running directly west to east from point "A" to point "B" on the plat. A copy of the Parker survey is attached to this opinion as Appendix B.
The property in dispute is approximately 17 acres lying south of the ideal boundary line, located between the boundary line and a fence and lane which traverse the property in a northwest to southeast direction, and bounded on the west by the river and on the east by the Boeuf Wildlife Management Area. The evidence is clear that Nugent has possessed that part of the disputed property east of Highway 559 and west of Horseshoe Lake, shown as "cultivated" on the Parker survey, by clearing and farming the property since his acquisition in 1964, a period of approximately 19 years prior to the commencement of this litigation. He also has been in possession of that part of the disputed property west of the highway for several years by virtue of some clearing activity and the location of his daughter's trailer home thereon. There is no evidence of his possession of that part of the disputed property shown on the survey as "Horseshoe Lake."
It is also clear from the evidence that Nugent's ancestor in title, Benton Rushing, was in possession of that part of the disputed property east of the highway and west of the lake for many years, dating back at least to the early 1930's, and that the fence and lane have been in existence for at least that period of time. There is a serious dispute as to whether Benton Rushing possessed "as owner" as will be discussed in more detail later in this opinion.
After Franks and Ruddell acquired their property in 1983, they had a survey made and then erected a one-strand barbed wire fence along the ideal boundary line, across fields which Nugent had disced preparatory to planting a soybean crop. This action provoked the present dispute and litigation between the parties.

ISSUES ON APPEAL
The issues on appeal are:

*820 1. Whether Nugent is entitled to damages for trespass and, if so, whether the amount awarded was either excessive or inadequate;
2. Whether Franks and Ruddell as plaintiffs in the petitory action met the required burden of proving that they acquired ownership of the disputed property through conveyances stemming from the act of donation by the common ancestor; more specifically, whether the disputed property was included within the description of the lot donated to their ancestor in title;
3. Whether there was sufficient evidence of possession as owner by Benton Rushing, Nugent's ancestor in title, so that, by tacking the possession of his vendor, Nugent established the necessary 30 years possession to acquire ownership of the disputed property by acquisitive prescription.
4. Whether court costs were properly assessed.

TRESPASS DAMAGES
The trial court found that since Franks and Ruddell relied on surveys, the trespass was in good faith and Nugent was not entitled to damages for mental anguish. Nugent was awarded $750.00 for "general damages."
Although Franks and Ruddell were justified in believing that the boundary of the property purchased by them was as shown on the surveys, they also were well aware that the property across which they placed the fence had been in the possession of and actually farmed by Nugent for years, and that he considered it his property. Franks and Ruddell had no right, unilaterally and without establishing their ownership rights, to disturb Nugent's possession by erecting the fence, and in this sense their trespass was deliberate and purposeful.
General damages for inconvenience, mental anguish, and deprivation of property rights have consistently been awarded by Louisiana courts for deliberate and intentional trespass, and are considered compensatory damages. See Boswell v. Roy O. Martin Lumber Co. Inc., 363 So.2d 506 (La.1978); Turner v. Southern Excavation Inc., 322 So.2d 326 (La.App.2d Cir.1975). Garrett v. Martin Timber Co. Inc., 391 So.2d 928 (La.App.2d Cir.1980), relied upon by Franks and Ruddell is not applicable because it is authority only for the proposition that general damages of this nature are not allowable where the trespass is not intentional.
The evidence adduced at trial does not indicate that there was any physical damage to the property or that Nugent suffered any monetary loss. However, he was minimally inconvenienced in his farming operation and experienced some emotional and mental distress causing upset stomach and diarrhea.
Regardless of how the award was characterized by the trial court, we find no abuse of discretion in the award of $750.00 as general damages, the amount being within both the lower and upper limits of discretion for the damages established by Nugent. See LSA-C.C. Art. 1934(3); Boswell v. Roy O. Martin Lumber Co. Inc., supra.

PETITORY ACTIONPROOF OF TITLE
Nugent contends that Franks and Ruddell, as plaintiffs in the petitory action, did not meet their burden of proving a perfect record title to the property in dispute. More specifically, Nugent contends that the description of the property conveyed to plaintiffs' ancestor in title by the 1883 act of donation from the parties' common ancestor in title cannot be determined to include the property in dispute, or that the north boundary of the property conveyed was along the old lane running in a northwesterly to southeasterly direction.
To obtain a judgment recognizing his ownership of immovable property, the plaintiff in a petitory action against a defendant in possession must prove that he acquired ownership from a previous owner or by acquisitive prescription. When the *821 titles of the parties are traced to a common author, the common author is presumed to be the previous owner. LSA-C.C. Arts. 531, 532; LSA-C.C.P. Art. 3653. The plaintiff is required to show title good against the world without regard to the title of the party in possession. Pure Oil Co. v. Skinner, 294 So.2d 797 (La.1974). The plaintiff makes out his title when he proves ownership by an unbroken chain of valid transfers from the sovereign or an ancestor in title common with the defendant. Avery v. Nash, 448 So.2d 841 (La.App.2d Cir.1984).
In a petitory action, the description in a deed must be such that the property intended to be conveyed can be located and identified. Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442 (1936); J.H. Jenkins Contractors, Inc. v. Farriel, 246 So.2d 340, 343 (La.App.1st Cir.1971). See also Vallee v. Richardson, 331 So.2d 201 (La.App. 3d Cir.1976).
In interpreting the description in a deed this court in Stutts v. Humphries, 408 So.2d 940 (La.App.2d Cir.1981) held:
... The real intention of the parties to a deed is to be sought and carried out whenever possible. Where the recitals in a deed are inconsistent or repugnant, the first recital does not necessarily prevail, but the whole language of the deed must be considered to ascertain its true construction. Where different clauses in a deed are repugnant, the court will effectuate the one which appears most in harmony with the purpose of the grant and the intention of the parties. Smith v. Chappell, 177 La. 311, 148 So. 242 (1933). In determining boundary lines, the law recognizes, named in the order of their importance, natural monuments, artificial monuments, distances, courses, and quantity, but the controlling consideration is the intention of the parties. Dufrene v. Bernstein, 190 La. 66, 181 So. 859 (1938). Quantity is the weakest method of identification. Bender v. Chew, 129 La. 849, 56 So. 1023 (1911). When the identity of the land excepted cannot be established, then the exception rather than the deed itself is void. Harrill v. Pitts, 194 La. 123, 193 So. 562 (1940); Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392 (1958).
In the act of donation dated November 22, 1883, Ucal and Claracy Cottingham donated to members of their family five lots described as being in Governmental Lots 3 and 4 of Section 14 and in Governmental Lots 2, 3, 4, and 5 of Section 11. Lot Number 1 was donated to May Louise Mayfield, ancestor in title of Franks and Ruddell. Lot Number 2 was donated to Mrs. Nancy Segrest, Nugent's ancestor in title.
The description of the property donated to Mrs. Mayfield is set forth as follows:
Lot No. (1) one beginning at the Northwest corner of Saidford Myers Land thence north 38 poles to a Stake on the bank of the River thence East (9) nine degrees South to horse Shoe Lake thence along the bank of Said Lake to where the north and South half mile line of Section fourteen cuts the Lake thence South on Said Line to the South end of Said horse Shoe Lake; thence up the bank of the Lake and Bayou to the place of beginning it being the South half of Lot 3 and 4 Sec. 14 Town 11 north R5-East Containing Eighty-five acres more or less, together with all building and improvements situated thereon....
The description of the property donated to Mrs. Segrest is set forth as follows:
Lot No. (2) Beginning at a stake on the river Bank the North west Corner of Lot No. one thence North [illegible] and eighty poles to an iron Stake thence east Eighty poles to a Stake thence South Thirty two poles to a stake thence East Eighty poles to half mile line to Sec. 14 thence South with said line to the north line of Lot No. (1) thence with said line to the place of beginning it being the north half of Lots 3 and 4 Sec. 14 T. 11 R. 5 E Containing Seventy-Four acres....
The other three lots were described by similar metes and bounds descriptions with similar references to being located in the north or south halves of certain governmental lots.
*822 Nugent contends that the description of Lot Number 1 is so vague that it cannot be determined that the property in dispute is included in Lot Number 1, or, alternatively, that the north boundary line of Lot Number 1 runs on an E 9° S course as stated in the description, along the old lane shown on the Parker survey.
Franks and Ruddell contend that since the metes and bounds description of Lot Number 1 is vague, the summation clause describing the property as the south half of Lots 3 and 4 should control. They cite and rely on Smith v. Chappell, 177 La. 311, 148 So. 242 (1933) which held that where the first call is followed by a general description which was manifestly intended to be a summing up of the intention of the parties as to the premises conveyed, such general description controls all prior words and phrases used, if sufficient to identify with certainty the premises conveyed.
Numerous factors belie the contention of Franks and Ruddell that it was the intention of the parties to the act of donation that Lot 1 be precisely the south half of Governmental Lots 3 and 4 and that Lot Number 2 be precisely be the north half of Governmental Lots 3 and 4, with a due east and west boundary between the two donated lots, and the contention that the metes and bounds descriptions should be ignored.
None of the boundary lines between the several lots purport to run east and west along the lines or half-way lines of the governmental lots. In fact, all of the boundary lines are irregular, as illustrated by the schematic drawing of the lots plotted from the metes and bounds descriptions contained in the act of donation, which drawing is attached to this opinion as Appendix C. The acreage figure for each lot is different. The north-south calls and distances do not coincide with the north-south dimensions of the governmental lots. The north line of Lot Number 1, which is also the south line of Lot Number 2, is described as running on a bearing of E 9° S (the same as S 81° E in modern survey terminology) and then along the bank of a lake. It is to be noted that the E 9° S call coincides closely to the bearing of the lane across the south half of Governmental Lots 3 and 4.
Other indications that the parties did not intend Lot Number 1 to be precisely the south half of Governmental Lots 3 and 4 is the call of 627 feet for the west line, the west line of Lot 3 being approximately 1320 feet, and the calls setting the south boundary along a bayou and lake bank rather than along the governmental lot lines.
The descriptions contained in the act of donation use as a starting point the northwest corner of the Sanford Myers property. There is in evidence copies of a deed by which Sanford Myers acquired property which included Governmental Lot 5 south of the property donated by the Cottinghams and possibly a part of Governmental Lots 3 and 4 included in the Cottingham donation. The surveyor, Parker, testified that the Sanford Myers property could not be located by reference to the conveyances of record or by reference to an old oak tree on the bank of the river which was described as being the northwest corner of the Myers property but which no longer exists. Accordingly, the surveyor was unable to locate the property described in the metes and bounds description of Lot Number 1 of the Cottingham donation by reference to conveyances of record or by references to any landmarks. His survey filed into evidence simply plots the ideal boundary line between the north half and south half of Governmental Lots 3 and 4, working from an established corner of Section 14.
It is impossible to locate the property described as being Lot Number 1 or the boundaries thereof, and it therefore cannot be determined that the act of donation to the ancestor in title of Franks and Ruddell included the property in dispute. Conveyances in the respective chains of title subsequent to the act of donation omitted the metes and bounds descriptions and simply referred to the respective tracts as the north half or the south half of Lots 3 and 4 of Section 14. The properties have been *823 assessed for tax purposes in this manner for many years. The respective owners have executed oil and gas leases in other documents using those descriptions. Nevertheless, the weight of the testimony at trial reflects that the parties' predecessors in title were uncertain as to the location of the boundary between the properties and that the boundary has never been fixed or recognized by the respective owners, and that the ideal line between the north and south halves of Lots 3 and 4 has never been recognized or observed as the correct boundary line.
The burden was on Franks and Ruddell, as plaintiffs in the petitory action, to prove valid title emanating from the common author in title, and to prove that the conveyance from the common author in title included the property in dispute. Because the description of the property in the act of donation from the common author is vague and indefinite and the property described therein cannot be identified or located, the plaintiffs have not established that the property in dispute was included in that conveyance. They have not carried their burden of proof and are not entitled to have their ownership recognized. The trial court judgment must be reversed in this respect.

PRESCRIPTIVE TITLE
Nugent contends that he is owner of the property in dispute by virtue of 30 years acquisitive prescription under LSA-C.C. Arts. 794 and 3486, and that the trial court erred in failing to recognize his ownership.
A possessor of land lacking good faith and just title may acquire prescriptive title to land by corporeally possessing a tract for 30 years with the intent to possess as owner. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public, and unequivocal, and confers title only to such immovable property as is actually possessed. LSA-C.C. Arts. 3424, 3476, 3486, 3487, and 3488. Additionally, under LSA-C.C. Art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for 30 years without interruption and within visible bounds. Such a title holder may obtain the 30 year possessory period which is necessary to perfect prescriptive title in the absence of good faith and just title by "tacking" on the possession of his ancestor in title. LSA-C.C. Arts. 794, 3442. Possession is only transferable by universal title or particular title, and thus privity of contract or estate is an essential prerequisite to tacking. LSA-C.C. Art. 3441; Brown v. Wood, 451 So.2d 569 (La.App.2d Cir.1984).
One is presumed to possess as owner unless he began to possess in the name of and for another. LSA-C.C. Art. 3427. The exercise of possession over a thing with the permission of or on behalf of the owner is precarious possession. LSA-C.C. Art. 3437. Acquisitive prescription does not run in favor of a precarious possessor or his universal successor. LSA-C.C. Art. 3477.
In the present case Nugent went into possession of the disputed tract when he purchased by deed the north half of Lot 3 and a part of Lot 4 of Section 14 from Benton Rushing in 1964. Since Nugent has not possessed the disputed tract for the necessary 30 years he must be able to tack the possession of his predecessor in title, Benton Rushing, in order to prevail in his claim of ownership by acquisitive prescription. Because the claim of acquisitive prescription falls under the provisions of LSA-C.C. Art. 794, "tacking" is appropriate in this case.
The trial court found that Nugent had not established possession of that portion of the tract lying between the highway and the river because Nugent did not cultivate that portion or possess that area in any other way as owner. Additionally, the trial court found that Benton Rushing, Nugent's vendor, possessed the property east of the highway and north of the old lane and fence through an accommodation of his relatives and not as owner. Therefore, the trial court rejected Nugent's claim of ownership *824 of the disputed property based upon 30 years acquisitive prescription.
It is undisputed that since 1964 when Nugent acquired the property, he has possessed the 17 acres east of the highway and north of the old lane and fence by cultivation. The primary issue for determination is whether Nugent's ancestor in title, Benton Rushing, possessed the disputed property as owner.
At the time Nugent purchased his property from Benton Rushing in 1964 the west part of the disputed property nearest the highway was a "woods pasture" and the east part near the lake was a field. Nugent bulldozed and cleared the woods pasture and has cultivated the entire area since that time, a period of about 19 years at the time this litigation was commenced.
The property to the south was owned at that time by Chancie Rushing and other members of his family. Chancie and Benton were cousins and friendly neighbors. Nugent testified that when he bought his property from Benton, both Benton and Chancie told him that the fence running north of and along the lane was the boundary between the respective properties. Nugent testified that Chancie told him that what was north of the fence was Nugent's property and what was south of the fence was Chancie's property. This testimony is strongly supported by the fact that no objection was made by Chancie Rushing to the clearing and cultivation of the property north of the fence by Nugent. This fact also strongly supports the notion that Benton Rushing's possession of the property north of the fence was as owner and was recognized as such by Chancie, even though they had not had the boundary between their property surveyed and did not know exactly where the surveyed line would lie.
The evidence is clear that Benton Rushing and his family were in possession of the property north of the fence for many years, at least from the early 1930's. All of the witnesses referred to the fence as Benton's fence. Most of the witnesses testified that Benton kept horses and one or two milk cows in the woods pasture north of the fence. One witness testified that Benton and his brother Randolph cultivated the field near the lake. Nugent testified that his father made a crop from that field in 1952 and paid the rent to Benton Rushing. Other witnesses testified that the field was cultivated under Benton's authorization in the middle 1950's. There was testimony that Benton and Chancie made statements to the effect that they did not know where the boundary line was, but that it was north of the lane and probably along the ditch north of the fence. Only a few feet separate the fence and ditch which was dug in the 1930's to drain the highway.
Neither the fact that Benton and Chancie were cousins and friendly neighbors who did not concern themselves with the exact location of a surveyed boundary, nor the fact that the location of such a boundary was not known to them, carries the implication that Benton Rushing's possession was anything other than as owner to the visible boundaries of the property possessed by him. An inference that Benton possessed by permission of or as an accommodation from Chancie is not warranted from the evidence.
Nugent's burden of proving possession as owner by Benton Rushing is aided by the presumption that one in possession possesses for himself as owner. This presumption has not been rebutted, but to the contrary, is supported by the evidence which shows that Benton Rushing exercised acts of corporeal possession of the property north of the fence consistent with ownership of the type of property involved, in practically the same manner as Chancie exercised possession of property owned by him south of the fence.
The fact that the property was carried on the tax rolls in accordance with the legal descriptions used in the deeds and that oil and gas leases and other documents were executed using the legal descriptions is of little probative value in determining the nature of Benton Rushing's possession as owner. He and his neighbor to the south were unaware of the location of the true *825 boundary according to the legal descriptions; the determining facts here are Benton Rushing's actual corporeal possession as owner to visible boundaries even though beyond the limits of his title.
Nugent established by a preponderance of the evidence that he and his vendor, Benton Rushing, had open, notorious, continuous, and uninterrupted possession as owner of the property east of the highway, north of the fence, and west of the lake for more than 30 years. Nugent thereby acquired title to that property by virtue of acquisitive prescription and is entitled to be recognized as owner thereof.
Although Nugent established his possession of the property west of the highway, between the highway and the river, north of a corner marked by an old fence across the highway from the lane, he did not establish any prior possession of that property by his vendor. He is not entitled to be recognized as owner of that property, but is entitled to judgment maintaining his possession thereof.

COURT COSTS
Franks and Ruddell urge that since they were successful in the trial court, the court erred in assessing court costs equally between the parties. Under the decision on appeal, Nugent becomes the successful party in most respects. Nevertheless, following the reasoning of the trial court it seems appropriate in this case where litigation was obviously necessary to resolve the substantial issues between the parties to assess the costs equally, and our decree will so order.

DECREE
For the reasons assigned, the judgment of the district court is affirmed as to the award of trespass damages and assessment of court costs. Otherwise, the judgment is reversed and set aside.
Judgment is rendered in these consolidated cases as follows:
Carl E. Nugent and Nancy Beckley Nugent are recognized as the owners by virtue of 30 years acquisitive prescription of the following described property, to wit:
A parcel of land in the south half of Lots 3 and 4, Section 14, Township 11 North, Range 5 East, Caldwell Parish, Louisiana, bounded on the north by the line between the south half and the north half of said lots, on the west by Highway 559, on the south by a fence along the north side of an old lane, and on the east by the bank of Horseshoe Lake, all as shown on a plat of survey dated June 14, 1983 prepared by Charles David Parker, filed into evidence in these proceedings.
Carl E. Nugent and Nancy Beckley Nugent are recognized as entitled to the right of possession of that part of the property shown on said plat of survey bounded on the north by the line between the south half and the north half of Lots 3 and 4, on the west by the Ouachita River, on the south by an old fence across Highway 559 from the old lane, and on the east by Highway 559.
Costs of these proceedings, including the costs of appeal, are assessed equally to Carl E. Nugent and Nancy Beckley Nugent and to Howard Franks and James Ruddell, Jr.
AFFIRMED IN PART; REVERSED IN PART AND RENDERED.
*826 
*827 
*828