499 So.2d 1138 (1986)
Robert O. McILWAIN, et ux., Plaintiff-Appellee,
v.
MANVILLE FOREST PRODUCTS CORPORATION, Defendant-Appellant.
No. 18170-CA.
Court of Appeal of Louisiana, Second Circuit.
December 3, 1986.
*1139 Shotwell, Brown & Sperry by George Wear, Jr., Monroe, for defendant-appellant.
Dimos, Brown, Erskine & Burkett by Donald R. Brown, Monroe, for plaintiff-appellee.
Michael Kramer, Winnsboro, for third party defendant-appellee Marilyn Hester Parker.
Before SEXTON and LINDSAY, JJ., and HEARD, J. Pro Tem.
LINDSAY, Judge.
Plaintiffs, Robert and Charlotte McIlwain, filed a possessory action against the defendant, Manville Forest Products Corp., claiming the defendant engaged in a timber cutting operation which interrupted their possession of a certain tract of land in Caldwell Parish. The defendant answered and converted the suit into a petitory action. The defendant also asserted a third party demand against Marilyn Hester Parker claiming she conveyed the disputed *1140 property to the defendant by a warranty deed. Defendant demanded refund of the purchase price should plaintiffs be successful in proving ownership of the disputed property. The trial court found that plaintiffs acquired ownership of the disputed property by acquisitive prescription and awarded plaintiffs treble damages for loss of the timber cut on the property. Plaintiffs also recovered the cost of constructing a new fence around the property and damages for mental anguish. Defendant's third party demand against Marilyn Hester Parker was denied. The defendant appealed. For the reasons set forth hereafter, we affirm in part, amend in part and reverse in part the trial court judgment.

FACTS
Marilyn Hester Parker and her ancestors owned a forty acre tract of land in Caldwell Parish for many years. The property is described as follows:
The Northwest quarter (NW¼) of the Northeast quarter (NE¼) of Section 19, Township 13 North, Range 3 East, Caldwell Parish, Louisiana.
The ancestors in title of Manville Forest Products owned the land which surrounded and bordered the above described tract. In 1925, Mrs. Parker's ancestors erected a fence. This fence encroached on the Manville property, creating the disputed tracts involving 7.6 acres, as shown by this diagram:

*1141 In 1948, Manville's predecessor company surveyed the property and painted and blazed the trees along the survey line indicating the boundary between the properties. This survey line was along the true boundary and inside the Hester/Parker fence line. These survey marks were reestablished in 1959 and 1967.
In 1977, Marilyn Hester Parker sold the above described tract to the McIlwains. The property description in the deed included only the forty acre tract, not the strips of property between the survey line and the fence line. However, in conversations between Mrs. Parker and the McIlwains, Mrs. Parker indicated the sale included the property up to the fence line.
In 1981, officials from Manville approached Mrs. Parker about obtaining a warranty deed to the property between the survey line and the fence line, stating that the property description in the deed from Mrs. Parker to the McIlwains did not include these tracts. Mrs. Parker gave a warranty deed for the disputed property to Manville in exchange for $5,000.
Manville then tore down the fence, went upon the disputed property and cut the timber. Robert McIlwain ordered Manville workers to cease timber operations on the property. However, Manville continued to cut the timber.
Plaintiffs filed a possessory action and an action for trespass against Manville. Manville answered, converting the proceedings into a petitory action and asserting a third party demand against Mrs. Parker under the warranty deed to recover the purchase price which Manville paid for the disputed property.
The trial court found that the McIlwains and their ancestors in title acquired ownership of the property through acquisitive prescription.
The trial court found the fair market value of the timber which was cut to be $1,562.68. The trial court found that Manville knew of the plaintiffs' possession and that Manville should have refrained from cutting timber on the property until the ownership dispute was settled. Because the trial court found that the defendant was in bad faith and trespassed on the property, plaintiffs received treble damages for a total of $4,687.74. Plaintiffs were also awarded $3,079 for erection of a new fence and $3,000 for general damages. The trial court denied Manville's third party demand against Mrs. Parker because it was on the advice of the defendant's representatives that she gave them the warranty deed.
The defendant appealed the trial court judgment claiming the trial court erred in finding that plaintiffs were the owners of the disputed property, in finding the defendant liable for damages to the plaintiffs and finding that the defendant was not entitled to recover the purchase price of the disputed property from Mrs. Parker on the third party demand. The other litigants did not appeal or answer the defendant's appeal.

ACQUISITIVE PRESCRIPTION
Defendant argues that the trial court erred in finding that Marilyn Hester Parker and her ancestors in title obtained ownership of the disputed property by thirty year acquisitive prescription. Defendant argues that the corporeal possession begun by Mrs. Parker's ancestors in 1925 by fencing and planting the property, was interrupted in 1948 when defendant's predecessor company surveyed the property and painted and blazed the trees along the boundary lines. The defendant reestablished this survey boundary in 1959 and again in 1967. However, the evidence shows that the defendant conducted no other activities on the property, other than marking the boundaries, until the present timber operation was begun.
The jurisprudence is well settled that surveying property and marking the survey line does not interrupt corporeal possession. Pitre v. Tenneco Oil Company, 385 So.2d 840 (La.App. 1st Cir.1980), writ denied 392 So.2d 678 (La.1980); Holliday v. Continental Can Company, Inc., 351 So.2d 181 (La.App. 2d Cir.1977); Olinkraft, *1142 Inc. v. Allen, 333 So.2d 250 (La.App. 2d Cir.1976); S.D. Hunter Foundation v. Board of Commissioners of Caddo Levy District, 286 So.2d 525 (La.App. 2d Cir. 1973). Therefore, defendant's contention that placing the survey line upon the property interrupted the plaintiffs' possession, thereby preventing their acquisition of the property by prescription, is without merit.
The record indicates that Mrs. Parker's ancestors erected the fence in 1925 and cultivated the enclosed property. In 1958 the property was taken out of cultivation and planted with pine trees by Mrs. Parker's ancestors. This is sufficient to establish that regardless of the survey line, the property was possessed corporeally by Mrs. Parker's ancestor's to the fence line for the requisite period of time in order for them to acquire ownership by prescription.

TACKING
Defendant next contends that plaintiffs do not own the disputed property because it was not included in the property description contained in their deed from Mrs. Parker. Defendant argues that thirty year acquisitive prescription was completed while Mrs. Parker possessed the property and that after that point, the property could only be conveyed by deed. For that reason defendant argues the plaintiffs were not entitled to tack their possession to that of Mrs. Parker and her ancestors. We find defendant's argument to be meritless.
Under the general code articles allowing for ownership acquired under prescriptive title, the thirty year period for possessing property with intent to possess as owner is a minimum period of time. Defendant argues in effect that because Mrs. Parker did not assert her ownership of the disputed property at the time it was acquired by prescription, her possession and ownership could not be continued by the plaintiffs. Defendant cites no authority for this proposition.
The fact that plaintiffs were entitled to tack their possession onto that of Mrs. Parker in order to prove ownership by acquisitive prescription, even though thirty years of adverse possession was completed while Mrs. Parker held the property, is illustrated by Nugent v. Franks, 471 So.2d 816 (La.App. 2d Cir.1985). In that case, the plaintiff asserted ownership of disputed property by virtue of thirty years acquisitive prescription. Plaintiff acquired the adjacent property in 1964 from Benton Rushing whose family had possessed the property from the early 1930's. It is clear that Rushing and his predecessor had acquired ownership of the disputed property at the time he conveyed ownership of the adjoining property by title to the plaintiff. Plaintiff continued to possess not only the property described in the deed but also the disputed property. Plaintiff was allowed to tack his possession to that of Rushing and his ancestors in title in order to prove ownership of the disputed property by thirty years acquisitive prescription. We said in Nugent that Nugent and his vendor had possessed the disputed property for more than thirty years and therefore Nugent was entitled to be recognized as owner of the property. Therefore, in the instant case we find that defendant's contention that ownership of the disputed property could be conveyed only by deed is without merit.
Defendant also argues that plaintiffs cannot tack their possession of the disputed property to that of Mrs. Parker and her ancestors because of the difference in the type of titles held by the respective parties. Defendant contends that Mrs. Parker was entitled to tack possession of the property in order to obtain ownership by acquisitive prescription because she inherited the adjoining property, thereby acquiring the property by universal title. Defendant argues that the subsequent sale from Mrs. Parker to the plaintiffs was by particular title and they were therefore not entitled to tack their possession of the disputed property onto that of Mrs. Parker and her ancestors. Defendant attempts to distinguish between the general tacking provisions found in LSA-C.C. Art. 3441 et seq. and those found in LSA-C.C. Art. 794.
*1143 We dealt at length with the distinction between these code articles in Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984), writ denied 452 So.2d 1176 (La.1984). In the present case, because the subject matter of this suit is essentially a boundary dispute, LSA-C.C. Art. 794 is the applicable provision. In Brown v. Wood, supra, we said that possession may be transferred by either universal or particular title as long as privity of title existed as required by LSA-C.C. Art. 794.
LSA-C.C. Art. 794 provides:
When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundaries shall be fixed along these bounds.[1]
This article specifically applies to boundary actions such as the subject matter of this suit. The privity of title between plaintiffs and Mrs. Parker need not extend to the property to which the plaintiffs assert prescriptive title. Under LSA-C.C. Art. 794, the plaintiffs could possess and prescribe beyond their title to the extent of the boundary. Brown v. Wood, supra.
Therefore, under this article, Mrs. Parker transferred her possession to the plaintiffs and they were entitled to tack their possession of the disputed property from 1977 to the present onto that of Mrs. Parker and her ancestors in title in order to show ownership by thirty year acquisitive prescription.
Finally, defendant argues that if plaintiffs were entitled to tack their possession onto that of their ancestors in title, such tacking would only extend to the "nearest visible boundary." Defendant contends that the survey line was the nearest visible boundary and therefore, plaintiffs could not possess acquisitively beyond that point. Defendant cites Brown v. Wood, supra for this proposition. In that case, the defendants owned property south of the disputed property. North of the defendant's property and on the disputed property was a road and farther north, a small river. Defendants claimed ownership by acquisitive prescription up to the river. However, we held that defendants only proved that they possessed up to the road. Therefore, we found defendants to be owners to this visible boundary.
LSA-C.C. Art. 794 requires possession within "visible boundaries" not within the "nearest" visible boundary. The record in the present case clearly shows possession to the fence line for more than thirty years. Therefore, plaintiffs have acquired ownership by prescription of all the disputed property lying within the fence line.

DAMAGES
The trial court awarded plaintiff treble damages for the timber cut by defendant under authority of LSA-R.S. 56:1478.1. The trial court also awarded plaintiffs $3,000 in general damages and awarded plaintiffs the cost of repairing the fence destroyed by defendant's logging operation. On appeal, defendant claims the trial court erred in each of these awards.
The defendant first claimed that as record owner of the disputed property, there was no trespass and therefore defendant does not owe plaintiff for the timber cut from the property. However, as we have previously stated, plaintiffs owned the disputed property and therefore defendant's claim must fall.
The next issue presented is the proper measure of damages owed by defendant to plaintiffs for the timber cut from the property. LSA-R.S. 56:1478.1 provides:

*1144 A. It shall be unlawful for any person to cut, fell, destroy or remove any trees, or to authorize or direct his agent or employee to cut, fell, destroy or remove any trees, growing or lying on the land of another, without the consent of the owner or legal possessor.
B. Whoever wilfully and intentionally violates the provisions of Subsection A shall be liable to the owner or legal possessor of the trees for civil damages in the amount of three times the fair market value of the trees cut, felled, destroyed or removed.
C. Whoever violates the provisions of Subsection A in good faith shall be liable to the owner or legal possessor of the trees for three times the fair market value of the trees cut, felled, destroyed or removed, except however, that the provisions of this section shall apply only to trees cut or removed across ownership lines, marked boundary lines, or outside of designated cutting area lines, and that no provision herein shall apply to cutting operations within an area covered by a contract or agreement with the owner.
D. The provisions of this section shall not apply to the clearing and maintenance of rights of way or to utility service situations where a utility is acting in good faith to minimize the damage or harm occasioned by an act of God; the provisions of this Act shall not apply to land surveying by or under the direction of a registered professional land surveyor, duly registered under the laws of the state of Louisiana.
E. Whoever violates the provisions of Subsection A as they relate to the cutting of standing cypress trees on water bottoms owned by the state of Louisiana shall, in addition to the penalties otherwise provided in this Section, be subject to a fine not to exceed $5,000, imprisonment not to exceed six months, or both.[2]
The trial court found that defendant was aware of the dispute concerning this property and yet it proceeded with its timber cutting operations. The record indicates the plaintiff, Roy McIlwain, went onto the property on several occasions in an effort to stop defendant's agents from taking timber from the land. We also note that by converting the action from a possessory action to a petitory action, defendant admitted that plaintiffs were in possession of the disputed property. The circumstances surrounding the defendant's acquisition of the warranty deed from Mrs. Parker and its knowledge of the dispute about the ownership of this property which had existed for years clearly show that defendants should have resolved the ownership issue before going upon this property and cutting the timber. These events support the trial court's view that defendant willfully and intentionally trespassed upon the property in order to cut timber in violation of the statute and therefore the plaintiffs are entitled to recover treble damages.
The damage provisions of LSA-R.S. 56:1478.1 are penal in nature and are to be strictly construed. However, the factual circumstances in the present case are distinguishable from those of previous cases in which we denied recovery of treble damages for taking timber from the property of another. In Garrett v. Martin Timber Company, Inc., 391 So.2d 928 (La.App.2d Cir.1980), writ denied 397 So.2d 804 (La. 1981), the defendant obtained the purported right to cut timber from a person who appeared to be the owner of the property in question. The defendant then went to great effort to stay within the boundaries of the purported owner's deed. The plaintiffs, although not record owners of the property, possessed the disputed property up to a fence line. However, the fence line was not visible in many places. Under these facts we found that the defendant, although a trespasser, was a trespasser in good faith and plaintiff was not entitled to treble damages.
*1145 A similar fact situation was presented in Morgan v. Fuller, 441 So.2d 290 (La. App.2d Cir.1983), writ denied 443 So.2d 596 (La.1983), where the plaintiff possessed beyond the limits of his title. The defendant who held record title to the property sold the timber on the disputed property to a timber cutter who cut only within the geographical area covered by the contract of sale. In that case, we found that the timber cutter was in good faith in trespassing on the property possessed by the plaintiff and therefore plaintiff was not entitled to treble damages.
In the present case, the defendant was not relying on the representations of a third party who claimed to be the owner of the disputed property. Defendant knew and recognized that plaintiffs were the possessors of the property. Instead of seeking permission from the plaintiffs to cut the timber, plaintiffs sought to obtain a deed from Mrs. Parker, the former owner, after she had conveyed her interest to the plaintiffs. Rather than seeking a judicial determination regarding ownership of the property, defendant went upon the property and began to cut timber over a clearly visible fence line. Even though plaintiffs informed defendant's agents that there was a dispute over the ownership of the property, the defendant, rather than ceasing operations pending a decision on the dispute, continued to cut timber. Defendant's actions were a willful and intentional violation of LSA-R.S. 56:1478.1 in that defendant went upon the property and cut timber from that property knowing that plaintiffs possessed the property and that ownership of the property was in dispute. Therefore, the trial court was correct in awarding the plaintiffs treble damages for the timber cut from the disputed property.
The defendant also asserts that the trial court erred in its valuation of the timber. It was upon this valuation that the amount of damages was determined. Defendant provided figures indicating the value of the timber cut from the property was $1,412.58. Plaintiffs' expert indicated the value of the timber was $1,712.58. The trial court found the value to be $1,562.58. This was a factual determination by the trial court which is not manifestly erroneous and therefore we do not disturb the finding on appeal. Morgan v. Fuller, supra.
Defendant further claims the trial court erred in awarding plaintiffs $3,000 in general damages. Defendant claims that a good faith claim of ownership to the disputed property existed and that because the trespass was in good faith, plaintiffs cannot recover damages for mental anguish.
The jurisprudence has allowed general damages for trespass and the cutting of the timber where the trespasser was in bad faith by consciously performing a wrongful act in cutting timber on another person's land. Garrett v. Martin Timber Company, Inc., supra; McGee v. Seco Timber Company, 350 So.2d 1265 (La.App. 3rd Cir. 1977). In the present case, the defendant knew of the dispute over the ownership of the property and yet continued to cut timber from that property over the protest of the plaintiffs. This constitutes the requisite bad faith justifying the award to plaintiffs of damages for mental anguish.
The record indicates that Robert McIlwain went onto the property on more than one occasion and was required to confront his long time friend who was employed by defendant in an effort to persuade defendant to cease the timber cutting operation. While cutting the timber, an irreplaceable huge old tree was destroyed. The entire situation was extremely upsetting to Mr. and Mrs. McIlwain. The trial court award of damages for mental anguish to the plaintiffs in this case was correct.
Defendant contends the trial court erred in awarding plaintiffs $3,079 in order to repair the fence destroyed by defendant's logging operation. Defendant argues the trial court should not have awarded the full amount necessary to construct a new fence when the old fence was already run down and much damage was attributable to age.
*1146 In Garrett v. Martin Timber Company, Inc., supra, we held that any compensation for replacing a fence has to be based on cost of building a new fence because "one cannot build an old fence." In that case, plaintiff recognized that much of the damage to the fence was caused by the passage of time and not by the logging operation. Recognizing that fact, plaintiff only sought to recover one-half the cost of rebuilding the fence and we upheld the trial court's award for that amount.
Accordingly, in the present case we find that although defendant was responsible for part of the damage to this fence, defendant's actions were not the sole cause of the destruction. The fence was old and dilapidated and actually served little purpose other than to mark the boundary. The estimate given for replacement of the fence would place plaintiffs in a better position than they were in at the time just prior to commencement of the logging operation. Plaintiffs are entitled to compensation for their loss, but are not entitled to profit from their loss. Taking these facts into consideration, we believe that a just award for the damage caused by the defendants would be $1,539.50, or one-half the amount awarded by the trial court. Therefore, we amend and reduce the trial court award to the sum of $1,539.50.

THIRD PARTY DEMAND
Defendant finally argues that the trial court erred in denying the third party demand against Marilyn Hester Parker. Defendant argues that because Mrs. Parker gave defendant a warranty deed to the property in 1981 that Mrs. Parker should at least be ordered to return the purchase price of $5,000. For the following reasons we find the trial court erred in denying defendant's third party demand against Marilyn Hester Parker and reverse that portion of the judgment to allow defendant to recover the purchase price of $5,000 from Mrs. Parker.
LSA-C.C. Art. 2506 provides:
When there is a promise of warranty, or when no stipulation was made on that subject, if the buyer be evicted, he has a right to claim against the seller:
1. The restitution of the price.
2. That of the fruits or revenues, when he is obliged to return them to the owner who evicts him.
3. All the costs occasioned, either by the suit in warranty on the part of the buyer, or by that brought by the original plaintiff.
4. The damages, when he has suffered any, besides the price that he has paid.
Even when a buyer at the time of sale knows of the danger of eviction he may still recover the purchase price of the property. However, such knowledge defeats the purchaser's right to recover damages. Richmond v. Zapata Development Corp., 350 So.2d 875 (La.1977); Collins v. Slocum, 317 So.2d 672 (La.App. 3rd Cir.1975), writs denied 321 So.2d 362, 363, 364 (La. 1975).
In the present case, Mrs. Parker executed a warranty deed in favor of defendant. Now that defendant has been evicted from the property by the plaintiff's superior claim of ownership, defendant is entitled to recover the purchase price of $5,000 from Marilyn Hester Parker. However, because defendant knew of the danger of eviction, Mrs. Parker is not liable for damages.

CONCLUSION
For the above stated reasons, we affirm the trial court judgment finding the plaintiffs to be the owners of the disputed property, awarding them treble damages for timber cut from the property and awarding them $3,000 in general damages.
We amend and reduce the trial court judgment awarding plaintiffs the cost of erecting a new fence around the property. We award plaintiffs $1,539.50 for repairs to the fence.
We reverse the trial court judgment denying defendant's third party demand against Marilyn Hester Parker for the return of the purchase price paid for this *1147 property. We award the defendant judgment against Marilyn Hester Parker in the amount of $5,000, the price defendant paid Mrs. Parker for the property.
Costs of these proceedings in this court and in the court below are taxed to the defendant.
AFFIRMED IN PART, AMENDED IN PART AND REVERSED IN PART.
NOTES
[1] This article was enacted by Act No. 169 of 1977 and was intended to clarify and not change the law expressed by former LSA-C.C. Art. 852. The thirty year period for acquisitive prescription in the present case accrued prior to 1977, however, because there is no change in the law the problem of retroactivity need not be addressed. Brown v. Wood, supra; Fruge v. Lyon, 373 So.2d 220 (La.App. 3rd Cir.1979).
[2] We note that this suit was brought in 1982 prior to the amendment of LSA-R.S. 56:1478.1 allowing recovery for reasonable attorney fees against a bad faith trespasser. The statute is quoted here as it appeared during the time the operative facts in this case occurred.