KING, Judge.
The sole issue presented by this appeal is whether the trial judge was correct in finding that defendants had acquired property by thirty years acquisitive- prescription.
Alberto Delgado and his wife, Waldtraut K.H. Delgado (hereinafter plaintiffs), filed suit seeking a declaratory judgment annul *1076 ling an exchange deed entered into between defendants, W.A. Burns (hereinafter Burns), and Merle Brack and Marvin Brack (hereinafter the Brack brothers). Part of the property described in the exchange deed, the disputed property, is a part of the same property Burns had earlier conveyed to plaintiffs. Defendants, the Brack brothers, answered and reconvened claiming to have acquired title to the disputed property by acquisitive prescription of thirty years.
After a trial on the merits, the matter was taken under advisement. Written reasons for judgment were rendered by the trial court denying plaintiffs’ declaratory judgment and rendering judgment in favor of defendants and against plaintiffs recognizing defendants’ title to the disputed property by acquisitive prescription of thirty years. A formal written judgment was signed. Plaintiffs timely appeal. We affirm.
FACTS
The disputed property is a strip of land, approximately 68 feet east-west by approximately 22 feet north-south, that runs east-west along the north side of plaintiffs’ property and a strip of land, approximately 190 feet north-south by approximately 28 feet east-west, that runs north-south on the west side of plaintiffs’ property (hereinafter these two strips of property are referred to as the disputed property).
The property north of the disputed property was bought in 1945 by the father of defendants, Marvin and Merle Brack. Upon their father’s death, the Brack brothers were put in possession of their father’s property, subject to their mother’s usu-fruct. Marvin Brack acquired the property west of the disputed property from Ed Mayo in 1956. These two properties are hereinafter sometimes collectively referred to as the Brack properties.
In 1973, Burns acquired the property south and east and contiguous to the Brack properties from Myrtis McNabb Dondero. Burns sold this same property to plaintiffs in 1983. Plaintiffs had actually begun occupying the Burns’ property in 1975 and began paying for it in installments. Plaintiffs made the final payment and received a deed to the property from Burns on August 23, 1983. This deed was subsequently amended by Burns and plaintiffs in 1985 as to an erroneous property description, to correctly describe the property sold.
Marvin Brack testified at trial that there were fences on the disputed property, both north and west of plaintiffs’ property, when he acquired it. Marvin Brack testified that, in 1947, when he “returned from the army,” the fence to the north of plaintiffs’ property was there. Similarly, Marvin Brack testified that there was a fence to the west of plaintiffs’ property, where his predecessor in title, Mr. Mayo, had a cow and horse, when he acquired it in 1956.
A boundary dispute arose between Burns and the Brack brothers concerning the disputed property north and west of the northwest corner of the Burns property, which is now the plaintiffs’ property, and an exchange deed was executed by them in 1987 which was intended to settle the dispute by fixing the property lines at the old existing fence lines.
Plaintiffs argue that when this exchange deed was executed in 1987, a part of the property they bought from Burns in 1983, as described in the 1985 correction deed, was included in the property given to the Brack brothers by Burns in the exchange deed. Plaintiffs allege that when Burns actually executed the exchange deed in 1987, he no longer had record title to the disputed property since Burns had previously sold it to plaintiffs by their original deed in 1983, which was amended and corrected in 1985.
On April 13,1988, plaintiffs filed this suit for a declaratory judgment seeking to annul the exchange deed entered into between the defendants, Burns and the Brack brothers.
The defendants, the Brack brothers, answered and reconvened claiming they had acquired the disputed property by thirty years acquisitive prescription.
Mr. W.R. Burns testified that it was only his intention to sell to plaintiffs his property bounded by the old fences on the north *1077 and west and the Brack brothers property-north and west of these old fences. Mr. Burns testified that he thought his property line only went up to these old fences when he bought his property in 1973. Mr. Burns further testified that he and plaintiffs executed a correction deed in 1985, after plaintiffs had obtained a survey, to correct the description of the property he had sold to plaintiffs. He testified that he thought this correction deed to plaintiffs only included the property he owned south and east of the old fences and the Brack brothers property north and west of these old fences.
At trial, Mrs. Delgado testified that, when she first began possessing the Burns land that she eventually bought, she built a new fence east of the old existing north-south fence line to keep her chickens on her property. In 1985, Mrs. Delgado had her property surveyed and that is when she realized her record title included the disputed property, which is north and west of the original fences. Mrs. Delgado testified that, prior to this survey, she thought all of the land west of her fence (the one she built) and north of the old east-west fence belonged to the Brack brothers.
Johnny Beason, who is 61 years old, testified that the old east-west fence on the disputed northern tract of property was there when he was a “kid,” and that he never saw the property north of that fence look unused because Marvin Brack always mowed it and planted it.
Aliene Mayo Larney, who is 60 years old, testified that for 38 years; every day, twice a day, she would go onto the Brack property, crossing the east-west fence on the disputed northern tract of property, in order to get fresh milk for her baby son who was allergic to formula. Mrs. Larney remembers that the Brack property had a garden there because, in addition to fresh milk, she got fresh vegetables as well. Mrs. Larney also remembers the fence on the disputed property as always being there and the land on the Brack side, all the way up to the fence, as being mowed and “manicured.”
Elmer Mayo, age 54, testified that when his parents bought the land Marvin Brack now owns, he was about 10 years old and he remembers the land having fences on it. Mr. Mayo also remembered Marvin Brack’s father having cattle which grazed to the fence line, and he remembers helping to keep the fences repaired. Mr. Mayo testified he remembers Marvin Brack mowing the property and planting gardens on his side of the fence.
Charles Moore, age 59, testified that he remembers going through the Bracks’ property (which then belonged to the' Wat-sons), when he was 10 or 12 years of age, and climbing the east-west fence to use the Watsons’ telephone because they were the only ones in the area who had one. Mr. Moore remembers when the Bracks bought the property and he recalls that the property was always mowed and that animals and gardens were raised on the Brack property north of the fence.
Marvin Stamps testified that he remembers Marvin Brack having a garden every year and that his property was fenced on its southern side.
Mr. Carl Tidbitts, age 42, testified that he remembers Marvin Brack’s property always being fenced and gardens being near the fence.
Plaintiffs argue that the boundary between the disputed property in question should be fixed according to their record title from Burns. The Brack brothers argue that they have acquired possession of the disputed property by thirty years acquisitive prescription.
It is a well established principle in our law that where there is a visible boundary and where there has been actual, uninterrupted possession, either in person or through ancestors in title, for thirty years or more of the land extending beyond that described in the record title and embraced within the visible bounds, then the party who possesses it acquires the right to the land beyond his record title up to the visible bounds. La.C.C. Art. 794; Williams v. Peacock, 441 So.2d 57 (La.App. 3 Cir.1983), and cases cited therein.
*1078 The requirements for this type of thirty year acquisitive prescription are that one maintain an enclosure, such as a fence, around the property and exercise open, physical possession as owner for a continuous and uninterrupted period of thirty years. Williams, supra. There must not only have been evidence of a corporeal possession of the property for the required period of time, but also a positive intent to possess as owner shown by the possessor during the time. Williams, supra; William T Burton Industries, Inc., 346 So.2d 1333 (La.App. 3 Cir.1977).
The tacking of possession of all predecessors in title is permitted for acquisitive prescription beyond title to a visible boundary. La.C.C. Art. 3486 (formerly La.C.C. Art. 3499 of the La.C.C. of 1870); Williams, supra; Brown v. Wood, 451 So.2d 569 (La.App. 2 Cir.), writ den., 452 So.2d 1176 (La.1984); McIlwain v. Manville Forest Products Corp., 499 So.2d 1138 (La.App. 2 Cir.1986); Dubois v. Richard, 223 So.2d 198 (La.App. 3 Cir.1969).
A petitory action alleging a prescriptive title involves a question of fact and the determination of fact by the trier should not be disturbed in the absence of manifest error. Williams, supra; Richard v. Thierry, 509 So.2d 604 (La.App. 3 Cir.1987).
After reviewing the evidence in the record, we do not find that the trial judge was clearly wrong or manifestly in error in finding that defendants had acquired the disputed property through thirty years acquisitive prescription.
In his reasons for judgment, the trial judge referred to the testimony of the witnesses, all of whom remembered the disputed property north of plaintiffs’ property as being continuously, openly, and uninterruptedly possessed by the Brack brothers and their parents for over thirty years up to a visible fence. The testimony of these witnesses was to the effect that the disputed property was always used to raise animals and/or vegetables and that the east-west fence had been there for longer than thirty years. The trial judge found that the fence that was on the Mayo property, on the west side of plaintiffs’ property, had been in existence since at least 1956 and that the property west of this fence had been openly, continuously, and uninterruptedly possessed up to this fence for over thirty years by Marvin Brack as owner since his purchase of the Mayo property. The trial judge also held that the Brack brothers could tack their possession to that of their parents and Mayo, their ancestors in title, beyond their record titles since there were visible boundaries, thus clearly giving them more than thirty years acquisitive prescription of the disputed property.
Plaintiff maintains that, when the survey of her property was made and stakes were put to mark her record title in 1985, prescription was interrupted. The trial judge correctly pointed out in his reasons for judgment that the jurisprudence is well settled that surveying property and marking the survey line does not interrupt adverse corporeal possession. McIlwain, supra, and the cases cited therein.
After a careful review of the evidence in the record, we do not find that the trial court was clearly wrong or manifestly in error in finding that the Brack brothers had acquired the disputed property by thirty year acquisitive prescription.
For these reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiff-appellant.
AFFIRMED.