451 So.2d 569 (1984)
Beulah Howell BROWN, et al., Plaintiffs-Appellees,
v.
Vera McClanahan WOOD, et vir., Defendants-Appellants.
No. 15886-CA.
Court of Appeal of Louisiana, Second Circuit.
April 30, 1984.
Writ Denied June 15, 1984.
*571 Cameron C. Minard, Columbia, for defendants-appellants.
Dimos, Brown, Erskine & Burkett by David G. Erskine and Donald R. Brown, Monroe, for plaintiffs-appellees.
Before PRICE, HALL, MARVIN, JASPER E. JONES and SEXTON, JJ.
HALL, Judge.
Plaintiffs filed a petitory action against defendants to establish their ownership of a tract of land in Caldwell Parish. The trial court awarded judgment in plaintiff's favor and defendants have appealed. We affirm in part, reverse in part, and remand.
Plaintiffs in this cause are Donald R. Brown, Charlotte Brown Hislop, Beulah Howell Brown, and Henry Brown. Defendants are husband and wife, Charles and Vera Wood. In this petitory action filed June 3, 1982, the plaintiffs, Browns, sought legal recognition of their ownership of the Bouef River river front tract to which they held the record title. In a decision rendered June 15, 1983, the trial court awarded judgment in plaintiff's favor, recognizing the Browns as owners of the tract in question and ordering defendants, the Woods, to surrender possession of that property.
The tract at issue, approximately 5 acres in Section 18, Township 14 North, Range 5 East, is located between the southern bank of the Bouef River and other property held by the Woods under record title, and is traversed by Louisiana Highway 133. The following diagram illustrates the situation:
*572 
The tract in question is part of a larger tract which was deeded to Dr. S.H. Brown, plaintiffs' ancestor in title, in 1904. The same tract was sold by Dr. Brown to Ernest "Buddy" Oliveaux and Tray Ritchie in 1936. In 1944, the tract was purchased at a sheriff's sale by Erwin and Cecil Brown, the sons of the then deceased Dr. S.H. Brown. Cecil and Erwin Brown have both since died intestate, and the four instant plaintiffs are their heirs. Plaintiffs Donald Brown and Charlotte Brown Hislop are the children and sole heirs of Cecil Brown. Plaintiffs Beulah Howell Brown and Henry Brown are the widow and son, respectively, of Erwin Brown, and his sole surviving heirs. Upon the deaths of Cecil and Erwin, the four instant plaintiffs acquired record title to the tract in question via intestate succession. Thus, plaintiffs are the record owners of the contested property.
In 1956, defendants Charles and Vera Wood purchased from Ernest "Buddy" Oliveaux a plot of land in Section 19 immediately to the south of the disputed tract. The deed from Buddy Oliveaux to the Woods did not include or encompass the contested tract. However, subsequent to the 1956 conveyance to the Woods of the property abutting the south end of the contested river front acreage, the Woods performed various acts of corporeal possession on the disputed tract. In 1981, the Woods acquired a quit claim deed to that part of the Brown tract lying north of the highway from the Oliveauxs.
Ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Under the general codal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for 30 years with the intent to possess as owner. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public and unequivocal, and confers title only to such immovable property as is actually possessed. LSA-C.C. Arts. 3424, 3476, 3486, 3487, 3488. Alternatively, under Civil Code Art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for 30 years without interruption and within visible bounds. Such a title holder may attain the thirty *573 year possessory periodwhich is necessary to perfect prescriptive title in the absence of good faith and just titleby "tacking" on the possession of his ancestor in title. LSA-C.C. Arts. 794, 3442. Possession is only transferable by universal title or particular title, and thus privity of contract or estate is an essential prerequisite to tacking. LSA-C.C. Art. 3441.
The legal principles which govern tacking under Civil Code Article 794[1] are in some respects different and distinct from the principles which govern tacking under Civil Code Articles 3441 and 3442 (formerly embodied in Articles 3493-3496).[2] Article 794 deals with boundary prescription, strictly speaking, while Articles 3441 and 3442 provide general rules which refer in broader terms to acquisitive prescription of property, generally.
Article 794 states that:
"When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title called for, the boundary shall be fixed along these bounds."
Article 3441 provides that:
"Possession is transferable by universal title or by particular title."[3]
Tacking under Article 794 is different from tacking under the general tacking provisions of Articles 3441 and 3442 in the following respect:
Under Article 794, the privity of title between the possessor and his ancestor in title need not extend to the property to which the possessor asserts prescriptive title; under Article 794, the juridical link, or written instrument which passes to the possessor from his ancestor in title need not encompass or include the particular property to which the possessor claims prescriptive title. On the other hand, it is generally conceded under the general tacking provisions of Articles 3441 and 3442 and their statutory pre-cursors, that tacking is only *574 allowed with respect to property that is included and described in the juridical link between the possessor's ancestor in title and the possessor himself.
Simply stated, under Art. 794 (old Art. 852), one may utilize tacking to prescribe beyond title on adjacent property to the extent of visible boundaries, but under the general prescriptive articles, Arts. 3441 and 3442, tacking may be utilized to prescribe only to the extent of title. As was succinctly stated by former Justice, then Judge Tate, in Stanford v. Robertson, 144 So.2d 747, 750 (La.App. 3d Cir.1962),
"Under LSA-C.C. art. 3499, the possession of the predecessors in title cannot be added to that of the present possessor, unless the title of the present possessor includes the property in dispute, else there is no privity of estate such as is necessary to make up the thirty years adverse possession "as owner ". On the other hand, under LSA-C.C. Art. 852, the tacking of successive possessions up to the established visible bound between two estates is permitted, whether or not the land in dispute is included within the title description of the party pleading prescriptive title under this article." (Citations omitted).
However, when correctly viewed, there still must be some juridical link to effectuate tacking under either species of tacking, whether it is Article 794 or Articles 3441 and 3442.
The fact that Article 794 envisions that tacking requires some juridical link or privity of title between the possessor and his ancestor is clear. That statute affords prescriptive title only in instances where there has been thirty years of possession by the possessor "and his ancestors in title." (Emphasis added). The fact that Art. 794 envisions tacking only where there is privity of title is therefore clear from the fact that this Article expressly authorizes tacking not in terms of a predecessor in possession, but in terms of an "ancestor in title."
In summary, tacking allows one to prescribe beyond title under Art. 794, and not under Articles 3441 and 3442; but nevertheless some juridical link, or some title privity in contract or estate, is required before tacking is allowed under either Articles 3441 and 3442 or 794. See generally, Stutson v. McGee, 241 La. 646, 130 So.2d 403 (1961); Sessum v. Hemperley, 233 La. 444, 96 So.2d 832 (1957); Buckley v. Catlett, 203 La. 54, 13 So.2d 384 (1943); Emmer v. Rector, 175 La. 82, 143 So. 11 (1932); Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924); Sibley v. Pierson, 125 La. 478, 51 So. 502 (1910); Morrison Grain Co., Inc. v. Charrier, 410 So.2d 1202 (La. App. 3d Cir.1982); Speight v. Dowden, 405 So.2d 887 (La.App. 3d Cir.1981); Rimmer v. Jowers, 385 So.2d 1261 (La.App. 3d Cir. 1980); Fruge v. Lyons, 373 So.2d 220 (La. App. 3d Cir.1979); Fiorello v. Knecht, 334 So.2d 761 (La.App. 4th Cir.1976); Trahan v. Frankland, 317 So.2d 298 (La.App. 3d Cir.1975); Hilcliffe Farms, Inc. v. Marshall, 306 So.2d 337 (La.App. 3d Cir.1975); Carpenter v. Cobb, 293 So.2d 888 (La.App. 1st Cir.1974); Stanford v. Robertson, supra; Mills v. Butler, 131 So.2d 262 (La. App. 1st Cir.1961); Nelken v. Aldredge, 128 So.2d 843 (La.App. 3d Cir.1961); Hadwin v. Sledge, 116 So.2d 114 (La.App. 2d Cir.1959); Roberson v. Green, 91 So.2d 439 (La.App.2d Cir.1956); Finley v. Morgan, 80 So.2d 196 (La.App. 2d Cir.1955); Sattler v. Pellichino, 71 So.2d 689 (La.App. 1st Cir. 1954); Courvelle v. Eckart, 50 So.2d 325 (La.App. 1st Cir.1951).
See also, Chaney, Prescription Under Article 852, 13 La.L.Rev. 582 (1953); Dainow, Prescription, Louisiana Legislation of 1964, 25 La.L.Rev. 352 (1965); Comment, Tacking of Possession for Acquisitive Prescription, 8 La.L.Rev. 105 (1947); Comment, The Civil Code Articles on Establishment of Boundary, 56 Tul.L.Rev. 370 (1981); Note, Civil Law PropertyTacking Without Juridical Link, 24 La.L.Rev. 888 (1964); Note, ImmovablesThirty-Year Acquisitive PrescriptionTacking, 38 Tul.L.Rev. 575 (1964); Note, ImmovablesBoundary Prescription Under Article *575 852Tacking of Possessions, 37 Tul.L. Rev. 333 (1963).[4]
It should be noted that Opdenwyer v. Brown, supra, is often mistakingly cited for the proposition that privity is not required for tacking under Art. 794. Such references are misleading and inaccurate since in Opdenwyer the possessor did have privity with his predecessor in title with respect to property adjacent to the disputed tract. Thus, there was privity of title in Opdenwyer, although it did not extend to the contested tract. Moreover, we have been unable to find any instances in Louisiana jurisprudence in which tacking has been allowed under Art. 794 (old Art. 852) absent some type of privity, though privity often embraces adjacent property or interests without the possessor's or his ancestor's title extending to the disputed property itself.
Privity of estate or contract is essential to tacking possessions for the theoretical reason thatabsent such privity succeeding possessions of the same tract are legally viewed as merely unconnected acts of trespass. In the absence of privity, acts of adverse possession by different possessors "can be construed only as a series of trespasses." Upon the termination "of each of these acts the possession returns, by operation of law, to the record owner of the property." Roberson v. Green, supra, at 447. See also, Buckley v. Catlett, supra; Emmer v. Rector, supra; Sibley v. Pierson, supra.
Privity of title denotes a relationship which "may be created by a deed, as in a sale, by an act, such as a donation, or by operation of law, as in a succession." Note, ImmovablesThirty-Year Acquisitive PrescriptionTacking, 38 Tul.L.Rev. 575, 577 (1964). See also, Stutson v. McGee, supra; Emmer v. Rector, supra; Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768 (1918). Privity of title, at least with respect to immovable property, cannot be created by verbal transactions, and as a general rule cannot be proved by parol evidence. As was stated by the Supreme Court in Stutson v. McGee:
"In our research ... we have carefully examined numerous other Louisiana authorities; but in none has any language been found which tends to support the contention of this defendant that, for the purpose of effecting an accrual of the 30 years' prescription, possession alone can be transferred by mere actions or by verbal agreement and that the transfer may be shown by parol evidence. 130 So.2d at 407."
In the instant suit, it was stipulated by the parties at trial that the Browns had perfect record title to the tract at issue: the Brown's chain of title extended back in unbroken sequence to the sovereign, such *576 title having been ultimately derived from a patent deeded to a private citizen by the United States Government. Since the Browns thereby established by stipulation that they held perfect record title to the property, the burden of proof in this petitory action shifted to the Woods to establish by a preponderance of the evidence that they had acquired prescriptive title to the tract. Verret v. Norwood, 311 So.2d 86 (La.App. 3d Cir.1975), app. den., 313 So.2d 842 (La.1975); Clayton v. Langston, 311 So.2d 74 (La.App. 3d Cir.1975); Tinney v. Lauve, 280 So.2d 588 (La.App. 4th Cir. 1973).
In discharging their burden of proving prescriptive title, defendants, the Woods, may not rely on the codal provisions conferring prescriptive title to immovable property upon ten years good faith possession since defendants have proven neither just title nor a good faith belief in ownership with respect to the tract in question. LSA-C.C. Arts. 3473-3485. Since they may not avail themselves of the good faith prescription of ten years, the Woods must prove that they have satisfied the above-stated requirements of 30 years prescription.
One of the most fundamental requirements of 30 years prescription is of course the requirement that possession continue for 30 years. LSA-C.C. Art. 3486. However, the Woods themselves have only performed possessory acts on the disputed tract since 1956. The Browns interrupted the Woods' possession and acquired prescription by filing suit in 1982. LSA-C.C. Art. 3462. Thus, the Woods did not accumulate the necessary 30 years of possession in the 26 year period between 1956 and 1982.
Since it is clear that the Woods themselves did not possess the disputed tract for the required 30 year period, they must tack the possession of the Oliveauxs onto their own possession in order to achieve the requisite 30 year period. The Woods accordingly contend that the Oliveauxs possessed the disputed tract for many years prior to the Woods' possession; they further contend that by tacking their own possession to that of the Oliveauxs, they have accumulated the 30 years of possession necessary to acquire prescriptive title.
The Woods are entitled to tack on the possession of the Oliveauxs. Although their 1956 deed from Oliveaux was not filed into evidence, it is clear from several references in the record that Oliveaux conveyed by deed to the Woods the NW/4 of the NW/4 of Section 19, less a portion thereof, which tract Oliveaux had acquired from Brown several years earlier. It does not appear that plaintiffs dispute this fact or that any issue was made of it at trial. The trial court's written reasons for judgment state: "The record at trial shows that the Woods acquired the adjacent property on March 9, 1956 by deed from Earnest Oliveaux, husband of Enolua Curry." The briefs filed on behalf of the plaintiffs in the trial court and this court contain reference to the defendants' ownership of the adjacent property to the south. Consequently, there exists the juridical link or privity of title which is essential to tacking.
The Woods also established the required 30 years possession by them and their ancestor in title to part of the disputed tract. The section line between Sections 18 and 19 is located at varying distances of only about 50 to 150 feet south of the curving highway. Oliveaux and then the Woods lived on the tract to which they had record title in a house located on the south side of the highway for more than 30 years prior to the time this suit was filed. In addition to maintaining their front yard to the highway, they maintained the balance of the property along the highway for raising crops and for pasture. The highway, and a fence along the south side of the highway, served as a visible north boundary of the property possessed by them as part of their homeplace. It appears that their possession extended to extentions of their east and west boundaries. The Woods and their ancestor in title, Oliveaux, possessed for more than 30 years, without interruption, within visible bounds, more land than their title called for, that is, the *577 narrow strip between their north property line and the highway.
There is also considerable evidence of their possession north of the highway, between the highway and the river. However, there is contrary evidence and considering the contradictory evidence as to that strip, we defer to the trial court's finding that the Woods failed to carry their burden of proof as to possession of that part of the disputed property north of the highway.
The Woods also stake their claim to tacking upon a quit claim deed to that part of the disputed tract lying north of the highway, executed by the Oliveauxs in favor of the Woods. However, this quit claim was not executed until 1981, at which timeas the trial court duly noted"this controversy was already boiling," and a dispute between the parties as to the tract in question had already fomented. We agree with the trial court that, under these circumstances, a quit claim deed executed in 1981 does not effectuate tacking with respect to a piece of property that was conveyed in 1956. In so holding, we are influenced by the Supreme Court's position that a juridical act confected under such circumstances is suspicious.
As was stated in Stutson v. McGee, 130 So.2d at 407,
"In a further endeavor to substantiate the claim of privity between himself and his predecessors in possession this defendant introduced a document styled an "Act of Correction and Confirmation" executed, after this suit was filed, by three of the seven persons then interested as vendors and which purported to show an intention to convey the disputed property. Because that instrument was belatedly confected we entertain serious doubt that it was admissible in evidence, for seemingly to approve such a practice in aid of the accrual of the acquisitive prescription might well provide a method for the perpetration of fraud."
However our view in this regard is not based solely on Stutson. Our position is predicated as well upon the a priori nature of tacking itself. Tacking, by its very nature, combines such possession of the ancestor in title which has accrued immediately prior to the transfer of the property with the possession of the possessor which accrues immediately subsequent to the transfer. It is the time of the transfer itself which constitutes the "day of reckoning" in computing the periods to be tacked. The possessory period of the ancestor in title which has accrued immediately prior to transfer of title is added to the possessory period of the succession in title which has accrued immediately subsequent to transfer of title. Thus, at the time the quit claim was confected, the ancestor, Oliveaux, had no accrued possession to transfer. In the strictest sense, privity may not be retroactively established subsequent to a transfer of possession. Privity of title must exist at the time possession is transferred, else there is no succession under title to the rights of the predecessor.
We are mindful that Coats v. Lee, 70 So.2d 229 (La.App. 2d Cir.1954), may be asserted as contrary to this proposition, and to Stutson v. McGee, supra. In Coats, the Court of Appeal remanded the cause to the trial court to receive in evidence a deed between the plaintiff/son and his predecessor/mother which it had previously excluded. The deed in question was asserted by the son as his basis for privity, and it was executed subsequent to the initiation of litigation.
In our view, however, the holding in Coats is not contrary to the result reached herein. In Coats, the Court of Appeal was cognizant that the plaintiff had initiated the proceedings as an action of jactitation, that the petitory issues had arisen solely as a result of defendant's answer, and that the trial court entirely excluded consideration of the quit claim. Moreover, the trial court was simply instructed to consider the deed along with the other evidence in the case, and was not definitively instructed to give the deed effect. Thus, considering that Coats was commenced as an action of *578 jactitation in which the trial court wholly failed to consider a submitted quit claim, and that the Court of Appeal's decision was therefore based on evidentiary considerations rather than substantive precepts, we do not read Coats to unequivocally mandate that privity may be retroactively established in a petitory action. Simply stated, the Coats court merely ruled that the deed in question was an evidentiary matter which should have been considered.
We note also that Coats may be distinguished from our case, insofar as in Coats the trial court apparently failed to make a crucial factual finding as to whether the deed embodied a genuine intent to transfer property rights, or merely a spurious desire to prevail in a litigious dispute. In the instant case, on the other hand, the trial court clearly found that the deed was intended not to transfer real rights, but to engineer a desired result in a legal contest. The trial court specifically considered the quit claim in our cause and determined, with respect to the parties' underlying intent, that the quit claim in question was confected simply for the purposes of litigation, and did not reflect a genuine intent to convey real rights. This finding of the trial court is supported by the fact that defendant's evidence of possession is considerably more tenuous with respect to the tract north of Highway 133 to which the Woods received a quit claim, and by the trial court's observation that defendants, the Woods, failed to call or depose the Oliveauxs, the parties from whom the quit claim was obtained.
In summary, Coats is not contrary to our holding herein, and is moreover distinguishable. We simply hold that this quit claim, which the trial court found embodied a spurious intent, which was executed while litigation was in the offing, and which involved a tract of land not adjacent to the title property of the party seeking to tack, is insufficient to establish privity for the purposes of tacking under LSA-C.C. Art. 794.
We further note the Woods' argument that the Browns lost ownership of the tract in question by not exercising possession of it for a 30 year period. However, this legal contention runs directly counter to the related codal precepts that possession and ownership are distinct, and that "ownership exists independently of any exercise of it and may not be lost by nonuse." LSA-C.C. Art. 481.
The district court judgment is correct insofar as it recognizes the plaintiffs as the owners of that part of the disputed tract north of the highway, and the judgment is affirmed to that extent. Insofar as the judgment of the district court recognizes the plaintiffs as owners of that part of the disputed tract south of the highway, it is reversed and set aside. The defendants are recognized as the owners of that part of the disputed tract south of the highway which adjoins the property of which they are record owners. The action is remanded to the district court for entry of a judgment in accordance with this decision, which judgment should describe the property involved as required by LSA-C.C.P. Art. 1919. Costs of these proceedings, including the costs of appeal, are assessed equally to the plaintiffs and defendants.
Affirmed in part, reversed in part, and remanded.
SEXTON, J., dissents and assigns written reasons.
PRICE, J., dissents for the reasons assigned by SEXTON, J.
SEXTON, Judge, dissenting.
I respectfully dissent in part.
I am of the view that the judgment of the trial court should be affirmed in its entirety. Upon the showing of record title by plaintiffs, the burden shifted to the defendants to prove by a preponderance their actual, public, continuous, uninterrupted and corporeal possession of the property for a period of at least thirty years. The defendants can only do so by virtue of LSA-C.C. Art. 794, which allows prescriptive acquisition beyond title with tacking, since the property at issue is not within the *579 bounds of the property to which defendants apparently have a title.
With respect to the juridical link essential to successful tacking under Art. 794, the majority says that "[i]t does not appear that plaintiffs dispute this fact or that any issue was made of it at trial." I agree that the matter was not an issue at the trial. The defendants only pled LSA-C.C. Arts. 3441 and 3442. The first mention of the concepts of Art. 794 that I can find in the case was the trial court's gratuitous holding that the defendants did not establish the necessary privity or juridical link to succeed under Art. 794stating that, "[t]he only link, and it is not a juridical one, between the Defendants and their ancestor in title relative to the property in dispute is the hearsay testimony of Vera Wood that the Oliveaux told her they possessed to the bank of Beouf River."
Of course, Louisiana rejects the theory of the case doctrine and it can thus be argued that the defendants are entitled to relief because they "apparently" have privity. However, the other party is entitled to basic notice. LSA-C.C.P. Art. 1005. Although the defendants pled a title in their answer, they never carried their burden of proving such. It may be that plaintiffs have a counter contention with respect to defendants' apparent privity or title which they did not assert because privity was never an issue during the trial. Moreover, plaintiffs in their brief to us assert that they have not conceded the issue.
Thus, I am unwilling to accept that the vital juridical link is apparent, and believe that under the posture of this record, the plaintiffs should succeed.
NOTES
[1] Art. 794, enacted by Act No. 169 of 1977, was intended to clarify but not change the law expressed in old Article 852, and we therefore need not address the problem of retroactivity herein. Fruge v. Lyons, 373 So.2d 220 (La.App. 3d Cir.1979). Article 852 formerly provided as follows:

Whether the titles, exhibited by the parties, whose lands are to be limited, consist of primitive concessions or other acts by which property may be transferred, if it be proved that the person whose title is of the latest date, or those under whom he holds, have enjoyed, in good or bad faith, uninterrupted possession during thirty years, of any quantity of land beyond that mentioned in his title, he will be permitted to retain it, and his neighbor, though he have a more ancient title, will only have a right to the excess; for if one can not prescribe against his own title, he can prescribe beyond his title or for more than it calls for, provided it be by thirty years possession.
[2] Civil Code Articles 3441 and 3442 as presently enacted are derived from old Articles 3493-3496 which provided as follows:

Art. 3493. Addition of possession by author of title; tacking.
The possessor is allowed to make the sum of possession necessary to prescribe, by adding to his own possession that of his author, in whatever manner he may have succeeded him, whether by an universal or particular, a lucrative or an onerous title.
Art. 3494. Author, definition.
By the word author in the preceding article, is understood the person from whom another derives his right, whether by a universal title, as by succession, or by particular title, as by sale, by donation, or any other title, onerous or gratuitous.
Thus, in every species of prescription, the possession of the heir may be joined to that of the ancestor, and the possession of the buyer to that of the seller.
Art. 3495. Tacking of possessions, continuity required.
But to enjoy this advantage, the different possessions must have succeeded each other without interval or interruption.
Art. 3496. Continuity of possessions in case of succession.
We do not consider as an interval between two possessions, that which takes place between the decease of the testator and the acceptance of the succession by the heir; the possession of the deceased being considered in law as continued in the person of his heir.
[3] Civil Code Article 3442 provides that:

"The possession of the transferor is tacked to that of the transferee if there has been no interruption of possession."
[4] The Supreme Court's decision in Noel v. Jumonville Pipe and Machinery Co., 245 La. 324, 158 So.2d 179 (1963), is a jurisprudential aberration and is apparently contrary to the traditional theoretical distinction between tacking under Art. 794 (old Art. 852) and tacking under the general prescription articles. In Noel, the Court apparently sanctioned a possessor's utilization of tacking to prescribe beyond title under the general prescription articles. We believe that the better view is that espoused by Justice Tate in Stanfordnamely tacking may only be utilized to prescribe beyond title under Art. 794. Moreover, we are inclined to the view that the law remains to this effect. In the first instance, Noel could be interpreted as allowing tacking only to the extent of title, insofar as the Court therein relied on a general or expansive title description which arguably embraced the disputed tract. Additionally, the Noel decision's apparent indication that tacking beyond title might be allowed under the general prescription articles was vociferously disputed in two stinging dissents, 158 So.2d 188 (McCaleb, J., dissenting), 158 So.2d 190 (Sanders, J., dissenting); and the apparent stance of the Noel Court has been almost universally disavowed by commentators. See generally, Dainow, Prescription, Louisiana Legislation of 1964, 25 La.L.Rev. 352 (1965); Comment, The Civil Code Articles on Establishment of Boundary, 56 Tul.L.Rev. 370 (1981); Note, Civil Law PropertyTacking Without Juridical Link, 24 La.L.Rev. 888 (1964); Note, ImmovablesThirty-Year Acquisitive Prescription Tacking, 38 Tul.L.Rev. 575 (1964).

Notwithstanding the problematic effect of Noel on the law, it does not in any fashion undermine our basic proposition herein, that some kind of privity is required to tack under either Art. 794 or the general prescription articles.