JaLOTTINGER, Chief Judge.
Plaintiffs, Bertha Falcone, David Falcone, Georgene Falcone Johnson, Matthew Fal-cone, Vincent Falcone, Jr., and Wayne Fal-cone (hereinafter collectively referred to as the “Falcones”), commenced this petitory action claiming ownership of several acres of land presently in possession of Springview Country Club. Following a bench trial, the trial court found that:
[A] four-hole golf course was built on property owned by Harry N. Spring[1] with the assistance of Lanny Murrell and *315 Harmon Schilling. The actual date the course was built is not clear, but evidence clearly indicates that by 1961 there was a four-hole golf course in operation. It is apparent through testimony and aerial photographs that the southern portion of the golf course has been in existence since that date, and has been kept up, mowed, groomed, and maintained as a golf course without any interruption in SPRING-VIEW’s possession of the property as a golf course until December 23, 1993.[2] SPRINGVIEW acquired the ownership of the property in April, 1964, and has possessed it with just title since that date.
Considering the Falcone interest, the Court is of the opinion that any interest or claim which they may have in the property located in the southern portion of the golf course, if any, was lost as a result of thirty year acquisitive prescription in 1991 by SPRINGVIEW and its predecessor in title and further, in 1974 by SPRINGVIEW’s ten year peaceful possession of the property within bounds and by just title. There was no evidence to show that there was an acknowledgment of ownership on the Fal-cone’s part or an interruption in prescription regarding the Falcone interest until December 23, 1993, at which time SPRINGVIEWs ownership rights had already been vested.
In other consolidated actions, the trial court found that prescription was interrupted as to the claim of another plaintiff, Marie Waehtel Smith, and further denied Spring-view’s claims for damages from the Falcones resulting from the erection of a fence across its golf course. After the rendition of this judgment, all matters involving Marie Waeh-tel Smith were compromised; however, as to the remaining issues, both the Falcones and Springview now appeal.
JgISSUES ON APPEAL
On appeal, the Falcones assert that the trial court erred in its determination that Springview had possessed the property with just title since the 1964 sale. The Falcones argue that absent just title, Springview could not acquire ownership of the parcel in question based upon only ten years of peaceful possession. The Falcones further take issue with the trial court’s finding that any interest they may have had in the southern portion of the golf course was lost as a result of thirty-year acquisitive prescription. Springview has responded to the errors raised by the Falcones, and also appeals the trial court’s denial of damages resulting from the actions of David Falcone.
VALIDITY OF SPRINGVIEWS OWNERSHIP
Following a review of the record in this matter, we note that on July 10, 1948, Harry N. Spring sold to Nicholl Spring the following described property:
76 acres, more or less, of land situated in the Parish of Tangipahoa, State of Louisiana, and more particularly described as the north half of the Tobias Smith Head-right No. 46, in T 3 S R 8 E, less 184 acres off the eastern part heretofore sold to Chesbrough Brothers by G.B. Spring, and 60 acres, more or less, heretofore sold .from the western portion of said North half of said Headlight to E.T. Spring by the said G.B. Spring, and is a portion of the land the said G.B. Spring acquired by purchase from Gerriah H. Spring, recorded in COB 16, page 315; acquired by vendor through deed recorded in COB 99, page 94, records of Tangipahoa Parish, Louisiana.
Thereafter, by virtue of a lease placed of record on October 31, 1961, Nicholl Spring leased to Springview Golf Club the following described property:
Fifty-six acres, more or less, to be taken from the following described tract:
A certain tract of land in the North half of Tobias Smith H R 46, T 3 S R 8 E, Tangipahoa Parish, Louisiana, more particularly described as commencing at a point where the North line of said HR 46 intersects the range line in T 3 S R 8 E, *316 proceed thence South 50 deg. East 11.40 chains for a point of beginning; thence South 50 deg. East 34 chains; thence South 40 deg. 15 min. West 25.60 chains; thence North 50 deg. West 26 chains to the centerline of old road; thence Northeasterly along the said road to point of beginning. Being the same property acquired by Nicholls Spring as per deed of record in COB 189, page 198.
This 56 acres to embrace all of that portion of the above tract East and North of the Road.
UUltimately, on April 10, 1964, Nicholl Spring (incorrectly referred to as Harry N. Spring by the trial court) sold the above-described property to Springview Golf Club, Inc.
Based upon the testimony contained in the record, it appears that certainly Nicholl Spring, and presumably, Harry N. Spring as well, openly possessed, within fenced bounds, land other than that described in their title. A portion of this land was leased, and later sold, to Springview Golf Club.
It is the opinion of this court that the trial court erred in its determination that Springview acquired ownership of the disputed southern portion of the golf course in 1974 through ten years of peaceful possession within bounds and by just title. As we stated recently in Harry Bourg Corp. v. Punch, 94-1557, (La.App. 1st Cir. 4/7/95); 653 So.2d 1322, 1325:
A title is just for purposes of acquisitive prescription when the deed is regular in form, is valid on its face, and would convey the property if executed by the owner. O’Brien v. Alcus Lands Partnership Trust, 577 So.2d 1094, 1097 (La.App. 1st Cir.1991); La. Civ.Code art. 3483. The title relied upon by one seeking to establish ten years acquisitive prescription must sufficiently describe the property so as to transfer its ownership. One must be able to identify and locate the property from the description in the deed itself or from other evidence which appears in the public records. O’Brien, 577 So.2d at 1097.
Because the parcel in question was not sufficiently described within the 1964 sale to Springview from Nicholl Spring (incorrectly referred to as Harry N. Spring by the trial court), Springview could not have acquired ownership based solely upon ten years acquisitive prescription. We turn now to the question of whether Springview acquired ownership of the property based upon acquisitive prescription of thirty years.
The Falcones evidently concede that Springview has openly possessed the parcel in question from April 10, 1964 until the date suit was filed on November 3, 1993, a period of approximately twenty-nine and one-half years. While it is clear from the record that the course was established several years pri- or to the 1964 sale, the Falcones assert that, at the time, Springview was merely a precarious possessor whose detention of the property was with the consent of the owner. The Falcones argue that as a precarious possessor, Springview could not possess for itself, nor could it subsequently tack its years of possession to those of a previous owner absent a juridical link.
Lin Brown v. Wood, 451 So.2d 569 (La.App. 2nd Cir.), writ denied, 452 So.2d 1176 (La.1984) the second circuit succinctly stated:
Ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Under the general co-dal provisions on acquisitive prescription, a possessor lacking good faith and/or just title may acquire prescriptive title to land by corporeally possessing a tract for thirty years with the intent to possess as owner. Such possession confers prescriptive title upon the possessor only when it is continuous, uninterrupted, peaceable, public and unequivocal, and confers title only to such immovable property as is actually possessed. LSA-C.C. Arts. 3424, 3476, 3486, 3487, 3488. Alternatively, under Civil Code Art. 794, a title holder may acquire more land than his title calls for by possessing property beyond his title for thirty years without interruption and within visible bounds. Such a title holder may attain the thirty year possessory period — which is necessary to perfect prescriptive title in the absence of good faith and just title — by “tacking” on the posses *317 sion of his ancestor in title. LSA-C.C. Arts. 794, 3442. Possession is only transferable by universal title or particular title, and thus privity of contract or estate is an essential prerequisite to tacking. LSA-C.C. Art. 3441.
[[Image here]]
Tacking under Article 794 is different from tacking under the general tacking provisions of Articles 3441 and 3442 in the following respect:
Under Article 794, the privity of title between the possessor and his ancestor in title does not extend to the property to which the possessor asserts prescriptive title; under Article 794, the juridical link, or written instrument which passes to the possessor from his ancestor in title need not encompass or include the particular property to which the possessor claims prescriptive title. On the other hand, it is generally conceded under the general tacking provisions of Articles 3441 and 3442 and their statutory pre-cursors, that tacking is only allowed with respect to property that is included and described in the juridical link between the possessor’s ancestor in title and the possessor himself.
Brown v. Wood, 451 So.2d at 572-73.
The court in Brown goes on to hold that while “some juridical link, or some title privity in contract or estate, is required before tacking is allowed under either Articles 3441 and 3442 or 791), ”, a review of Louisiana jurisprudence reveals that privity under La. Civ.Code art. 794 (formerly Art. 852) “often embraces adjacent property or interests without the possessor’s or his ancestor’s title extending to the disputed property itself.” Brown v. Wood, 451 So.2d at 575.
Upon application of these precepts to the facts presented by the instant case, the record reflects, and the trial court found, that Springview, and its predecessor in title maintained the parcel in question as a golf course from at least 1961. Admittedly, at all times prior to the |61964 sale, Springview’s detention of said property amounted to precarious possession attributable to the person with whose consent Springview possessed — its ancestor in title, Nicholl Spring. See La. Civ. Code art. 3437; Louisiana Civil Law Treatise, Property (3rd ed., 1991), AN. Yianno-poulos, § 319.
The act of sale from Nicholl Spring to Springview dated April 10, 1964, was the juridical link which enabled Springview to tack its possession to that of its ancestor in title, Nicholl Spring. Springview, first as a precarious possessor of Nicholl Spring, and later as a possessor in its own right following the April 10, 1964 sale, demonstrated actual, public, continuous, uninterrupted and corporeal possession of the property within visible bounds from at least 1961 until the filing of the instant suit on November 3, 1993. The trial court was correct in its determination that any interest the Falcones may have had in the southern portion of the golf course was lost in 1991 by the accrual of thirty years adverse possession.
DAMAGES CLAIMED BY SPRINGVIEW
As we noted previously, Springview,-in addition to responding to the errors raised by the Falcones, has also appealed the trial court’s denial of its claim for damages resulting from the actions of David Falcone.
The record reflects that after he and other members of his family filed suit against Springview, David Falcone, on December 23, 1993, erected a barbed wire fence across that portion of the golf course claimed by his family. Springview thereafter filed suit against the Falcone family seeking damages for the loss of use of its golf course, removal of the fence and repair of the course greens, together with a claim for attorney fees expended for the issuance of a restraining order and preliminary injunction. The trial court declined to award damages stating:
The Court does not feel that nay [sic] damages should be assessed against Mr. David Falcone. Mr. David Falcone testified that he had finished the erection of the fence across the golf course prior to SRINGVIEWs issuance of a restraining order and injunction. Since there was no reason for a restraining order, attorney fees will not be allowed. The assessment of damages based on loss of use for course fees and cart fees are speculative at best. In fact, testimony clearly indicates that it *318 was raining during the period of time the fence was built. The Court is not impressed with the amount of damages for restoration of the course and greens. All that had to be done was to remove steel posts. Based on the time period in which it took to remove the fence, the Court will not assess damages.
Upon review, we conclude that the record supports the findings made by the trial court. For this reason, we cannot say that the trial court erred in its decision not to assess damages against David Falcone.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is hereby affirmed at the Falcones’ costs.
AFFIRMED.

. The record reflects that Springview Golf Club, Inc. acquired the property in question from Nic-holl Spring on April 10, 1964, and not Harry N. Spring, as the trial court incorrectly noted in its written reasons for judgment.

. On December 23, 1993, David Falcone erected a barbed wire fence across that portion of the golf course claimed by his family.