| WILLIAMS, Judge.
The defendants, Russell Adams and Elizabeth Adams, appeal a judgment in favor of the plaintiffs, Willie Morris, Ura Dell Morris Dixon, Nora Mae McDade, Jack Morris, Jr. and Gracie Cooper. The trial court found that plaintiffs owned an *640 undivided interest in the property, which was owned by their parents through acquisitive prescription of thirty years. For the following reasons, we affirm.
FACTS
In August 1996, Russell and Elizabeth Adams purchased a tract of land containing approximately eight acres, located at the northeast corner of the intersection of Louisiana Highways 527 and 157 in Bossier Parish. The west and south sides of the tract were enclosed by fencing placed along the highways. There was also a fence on the east side of the property, but the north boundary was not fenced. This property is adjacent to an 80-acre tract of land to the north owned by the Morris family.
When the Adams began to move vehicles onto the property the plaintiffs, Willie Morris, Ura Morris Dixon, Nora Mae McDade, Jack Morris, Jr. and Gracie Cooper, filed a possessory action against defendants, Russell and Elizabeth Adams, alleging ownership of the 8-acre parcel by virtue of the continuous and public possession of the tract by their grandfather and parents. Defendants answered, asserting that they were the record title owners of the property, and filed peremptory exceptions of no right and no cause of action. Plaintiffs filed an amended petition seeking a judgment declaring them the owners of the subject property through acquisitive prescription of 30 years. Defendants filed an answer to the | ¡.amended petition and a reconventional demand for damages.
After hearing evidence, the trial court issued written reasons for judgment finding that Harrison and Nora McCrowell had possessed the subject property from a time prior to 1912 and that their daughter, Leona McCrowell Morris and her husband Jack Morris, possessed the property as owners openly, continuously and without interruption from 1939 until Jack Morris’ death in 1972, a period in excess of 30 years. The court rendered judgment declaring that before their deaths, Jack and Leona Morris had become the owners of the property by acquisitive prescription and that their heirs, the plaintiffs, now own an undivided interest in the property. Additionally, the defendants’ claims of ownership and possession of the subject property were denied. Defendants appeal the judgment.
DISCUSSION
The defendants contend the trial court erred in finding that plaintiffs were the owners of the tract at issue. Defendants argue that each plaintiff was required to prove that he or she individually possessed the 8-acre tract for the requisite 30-year period.
Ownership of immovable property under record title may be eclipsed and superseded by ownership acquired under prescriptive title. Brown v. Wood, 451 So.2d 569 (La.App. 2d Cir.1984). LSA-C.C. art. 3424 provides that to acquire possession, one must intend to possess as owner and take corporeal possession of the thing. Corporeal possession is the exercise of physical acts of use, detention or enjoyment over a thing. LSA-C.C. art. 3425. The intent to possess as owner may be inferred from the surrounding |,<¡facts and circumstances. Livingston v. Unopened Succession of Dixon, 589 So.2d 598 (La.App. 2d Cir.1991). Openly maintaining property to which one does not have record title by raising crops or using the property for pasturage is evidence of intent to possess as owner. Livingston, supra.
Ownership of immovable property may be acquired by prescription of 30 years without the need of good faith or *641 just title. LSA-C.C. art. 3486. The party-alleging acquisitive prescription must establish that his possession has been continuous, uninterrupted, peaceable, public and unequivocal. LSA-C.C. art. 3476. When a party proves acquisitive prescription, the boundary shall be fixed according to limits established by prescription rather than titles. If a party and his ancestors in title possessed for thirty years without interruption, within visible bounds, more land than their title calls for, the boundary shall be fixed along these limits. LSA-C.C. art. 794.
In the present case, the plaintiffs presented the testimony of attorney Paul Kitchens, who was accepted as an expert in the field of examination of title records. Kitchens stated that he examined the chain of title for the disputed tract and saw in the conveyance records a 1937 lease of mineral rights on the property executed by Nora McCrowell. Kitchens testified that the public records included a 1939 petition filed by the Dodd Foundation and several other plaintiffs, the record owners of the property at the time, seeking to set aside the mineral lease. There was also an answer filed by the McCrowell heirs alleging that Harrison and Nora McCro-well had exercised uninterrupted and continuous possession as owners of the property for 50 years prior to the filing of the lawsuit. Kitchens stated that in 1942 the |4Podd Foundation had conveyed the property with a deed which specifically referred to the ownership interest claimed by the McCrowell family. Kitchens testified that two subsequent deeds had conveyed the tract, but without a warranty of title.
Additionally, Kitchens stated that in 1955, Nora McCrowell granted a right of way in favor of the Louisiana Department of Highways for work on state highway 157, which runs along the west boundary of the property. He testified that the chain of title also included an affidavit of possession by Clare Clark, who stated that the McCrowell possession of the disputed tract began with a lease, which was prepared by the affiant. Kitchens opined that even if the McCrowells had begun possession of the property as lessees, the 1937 mineral lease and their answer to the 1939 lawsuit were sufficient acts to give notice of the McCrowells’ intent to possess the land as owners.
Grade Cooper, the daughter of Ura Dell Morris Dixon, testified that the Morris family owned the adjacent land to the north of the tract located at the intersection of highways 157 and 527. Cooper stated that her grandfather, Jack Morris, had farmed the property until his death in 1972. Cooper testified that she was born in 1947 and helped her grandfather with planting crops on the tract while growing up during the 1950s. She stated that McCrowell had built rail fences along the highways, enclosing the tract and that the state later built wire fencing when the roads were widened. Cooper -testified that she moved out of the family home after her marriage in 1965. She recalled that her grandmother, Leona Morris, gave the parish permission to use the 8-acre tract for a community vegetable garden in the | Rlate 1970s. Cooper testified that she and her husband began grazing cows on the tract after the community garden ceased in the 1980s. Cooper stated that the tract had always been fenced on the west, south and east sides, that there was never a fence along the north border of the tract and that she and her husband, continue to maintain the fences.
Willie Morris testified that he was born in 1922 in the family home north of the disputed tract. Morris stated that he .helped his father, Jack Morris, plough the land and plant corn and cotton on the *642 property. Morris testified that he always thought his family owned all of the land extending from the fence along highway 527 northward. Morris stated that his father farmed the tract until 1972, that the parish had then used the property for a community garden and that since the garden ended, his niece, Gracie Cooper, has been grazing cows on the property.
Ralph Phipps testified that he was familiar with the property because he has lived nearby since 1949 and passed the property on a daily basis for 20 years while driving to work. Phipps stated that from the early 1950s into the 1960s, he had seen crops of corn and cotton growing on the tract. Phipps testified that the tract had always been enclosed by a fence along the highways and that he had seen someone plowing the land during the 1960s.
Jane Phipps, the wife of Ralph, testified that she was familiar with the property at the highway intersection because she had driven past the land for over 40 years while working at the ammunition plant from 1951 through 1992. Phipps stated that she had observed farming activity on the property for a number of years and that there has always been a fence around the IfiCorner of the tract along the highways. Phipps testified that she had seen a government pea garden and then later cows grazing on the property.
Ura Dell Morris Dixon, a daughter of Leona and Jack Morris, testified that she was born in 1929 in the house on her parents’ property to the north of the 8-acre tract. Dixon stated that the property was enclosed by fences along the highways and that she and her siblings helped their father with the farm work. Dixon testified that her father planted corn, peanuts and cotton on the tract from the south border on highway 527 up to the north past the family house. Dixon stated that after her father died in 1972, the parish planted a pea garden on the property for several years and since then, her daughter Gracie has used the .land as pasture for cows.
The defendants presented testimony from a number of witnesses who stated that they were familiar with the 8-acre tract and had not observed any farming activity on the land in the late 1960s or early 1970s. Marguerite Garrison testified that she began driving past the tract in 1964 while eri route to her lake property. Garrison stated that she did not recall seeing any farming activity on the land from 1964 to the early 1970s, but did see a pea garden on the property in the late 1970s. She testified that the tract has always been fenced and that she has seen cows on the property in-more recent years. Garrison stated that she had not seen trees growing on the property except along the fence line.
‘ Tom Brown testified that he had driven past the property every work day for 20 years beginning in 1970. Brown stated that he had not seen any farming on the property,' but observed that there had been a fence on the |7west and south sides of the property during that time period. Brown did not recall seeing any trees growing on the property, which he described as “open acreage” with sage grass and "weeds.
Gene Clement and his brother, Jeffrey Clement, testified that since approximately 1968, they had never seen any type of farming on the property, which appeared to be a pasture. Gene Clement stated that there was a wire fence along the west and south sides of the property.
Jimmie Burks testified that he purchased the 8-acre tract at a parish tax sale in 1983 and had the land surveyed in 1987. Burks stated that the land is a pasture and that he did not recall any crops growing on the property during the 1960s. Burks tes *643 tified that in the 1970s, the parish had planted a pea garden on the tract, where he had picked peas. Burks stated that he had replaced a fallen fence on the east side of the property, placed a mailbox across the street and posted yellow signs on the fences along the west and south sides of the tract. Burks testified that he had informed Dixon and Willie Morris that he had bought the tract and that he had begun to build a fence along the north border of the property but stopped because of health problems in his family. Burks stated that he paid property taxes every year until he sold the tract.
Bud Kenner testified that he purchased an interest in the property from Burks in 1995. Kenner stated that he had not seen any farming activity on the tract since 1971, except for a pea garden in the late 1970s. He acknowledged that in the early 1990s, he had seen some cows grazing on the property. Kenner testified that after buying the propérty, he told |sMichaeI Morris, who lived in a house on the adjacent land to the north, that the person who owned the cows needed to put up a fence to keep them off the tract he had purchased. Kenner stated that when he bought the tract, he hired a paralegal to check for any recorded liens against the property. Kenner testified that in 1996, he sold the 8-acre tract to the defendants for $35,000, that an attorney had done a title examination before the sale and that he had not been informed of any adverse claims to the property as a result of that title search.
Russell Adams testified that he purchased the 8-acre tract from Kenner in August 1996 and that he had relied on an attorney to do a title examination. Adams stated that since the late 1960s, he had passed the property almost daily and had not seen any farming activity on the tract except for the community garden in the late 1970s. In addition, Adams testified that he had seen cows on the property beginning in approximately 1987. Adams acknowledged that pasturing cows on the land could indicate some property interest and that when he visited the tract in April 1997, he saw that someone was still using the land as pasture for cows at that time.
The evidence shows that in response to a lawsuit in 1939, Leona Morris, her mother and siblings filed an answer asserting that as the widow and heirs of Harrison McCrowell, they had been in continuous, uninterrupted, public and unequivocal possession as owners of the disputed property for approximately 50 years prior to the filing of the lawsuit. The testimony of Ura Dell Dixon, Willie Morris, Gracie Cooper and the Phipps demonstrated that Leona and Jack Morris exercised possession of the | adisputed tract by planting crops and enclosing the land within fences from 1939 until his death in 1972, a period exceeding 30 years. Even those witnesses who stated they had not seen farming activity on the property testified that the tract had always been enclosed by fences and was not overgrown, but appeared to be pasture. Thus, the record supports the trial court’s finding that as a result of their continuous, uninterrupted and public possession as owners of the 8-acre tract to the visible boundary of the fences along the state highways, Jack and Leona Morris obtained ownership of the property through acquisitive prescription of 30 years.
Citing Brown v. Wood, supra, the defendants argue that the plaintiffs were not entitled to tack their possession to that of the previous possessors because they lacked the necessary privity of title and were required to prove that they each individually possessed the property for the requisite 30-year period. A title holder may attain the 30-year possessory period *644 necessary to perfect prescriptive ownership in the absence of good faith and just title by “tacking” onto the possession of his ancestor in title. LSA-C.C. arts. 794 and 3442. Possession is transferable by universal or particular title and thus privity of contract or estate is an essential prerequisite to tacking. LSA-C.C. art. 3441; Brown v. Wood, supra.
In Brown, this court stated that there must be some juridical link to effectuate tacking under either Article 794 or Articles 3441 and 3442. However, we further stated that under Article 794, by which an owner may possess more land than called for in his title, the privity of title between the possessor and his ancestor in title need not extend to the property to which |inthe possessor asserts prescriptive title. In this case, the record shows that plaintiffs, who inherited ownership of the property adjoining the 8-acre tract possessed as pasture, did have privity with their predecessor in title with respect to the adjacent property.
Thus, contrary to defendants’ argument, there existed the juridical link or privity of title which is essential to tacking. Consequently, the plaintiffs were entitled to tack their possession of the tract to that of their ancestors in title, Jack and Leona Morris, in order to establish ownership by 30-year acquisitive prescription. The assignment of error lacks merit. In affirming the trial court’s judgment finding that plaintiffs obtained an ownership interest in the property by acquisitive prescription, we pretermit discussion of the defendants’ remaining assignments of error.
CONCLUSION
For the foregoing reasons, the district court’s judgment is affirmed. Costs of this appeal are assessed to the appellants, Russell and Elizabeth Adams.
AFFIRMED.