Dear Mr. Austin:
You have requested an opinion from this Office related to the ownership of certain dedicated streets within the geographical jurisdiction of the Sewerage Water Board of New Orleans ("the Board"). In order to fully answer your questions, we here present the factual scenario that you have provided to us.
 The Bayou Bienvenue Wetland Triangle is bounded by Florida Avenue on the south, the Main Outfall Canal on the north, and the Parish [line] on the east.[1]
Historically, the region was not open water but rather a cypress swamp characteristic of much of the region. Hydrologic modifications, capped by the opening of the Mississippi River-Gulf Outlet (MRGO) significantly degraded the area, changing its elevation and hydrology rendering it brackish and tidal.
 At some point in the past, the Triangle was slated for a different fate. While still a swamp, the area was platted, subdivided and sold off in individual lots. Incidental to those development plans, a grid of City streets was laid out and dedicated. None of those streets were ever developed and they are now entirely submerged. Despite their inundation by tidal waters, the submerged lands have *Page 2 
not been claimed as state lands (neither does it disclaim the lands either [sic], however, to the best of our knowledge).
 In recent years the City, State, and community leaders have expressed an interest in an ecological restoration/rehabilitation for the region. Plans have been developed under various programs including the Coastal Impact Assistance Program, the Coastal Wetlands Planning, Protection and Restoration Act, and the MRGO closure mitigation program. Currently various exciting plans are being developed by the Sewerage and Water Board, community organizations and environmental groups that have the potential to reinvigorate the [T]riangle and the surrounding neighborhoods, a fact attested to by the recent visit to the Triangle by the head of the White House Council on Environmental Quality.
 Central to any restoration of the wetlands of the Triangle is the matter of acquiring the necessary permissions and property rights. In particular, the question of the legal status of the dedicated but inundated streets looms large. In this regard we ask your assistance in answering the following questions regarding those streets:
 1. Who owns the lands shown in the dedicated streets?
 2. In what ways may those lands be used (specifically can their elevation be restored and can they be revegetated)?
 3. Could they be used and managed as part of a carbon sequestration program?
4. Assuming the lands shown as dedicated streets can be used in connection with a wetland restoration project, are there restrictions on who might conduct that work? Specifically, could the work be undertaken by the Sewerage and Water Board of New Orleans, the East Bank Protection Authority, the Louisiana State Office of Coastal Protection and Restoration, and/or the Army Corps of Engineers?
Implicit in your first question is whether the dedicated streets are owned by the title owners or some government entity. Before reaching that question, we must address the issue of navigability that you raised. As you noted in your opinion request, the State Land Office has not asserted a claim to the subject area as navigable, State-owned water bottoms. Through several hydrological connections, such as Bayou Bienvenue, the Triangle is likely impacted by the *Page 3 
ebb and flow of the tide.[2] We also recognize that the Triangle area is now at least partially inundated (i.e., it is no longer the cypress swamp that it was when the area was platted for development).[3]
However, a determination of whether the Triangle is navigable through the process of erosion or is so influenced by the tides that it can be said to be part of a navigable waterway (either of which would vest ownership of the property in the State by law) is a question of fact. This Office is not authorized to opine on questions of fact and thus no determination of navigability is herein made. Rather, asserting claims to navigable water bottoms is within the sole discretion of the State Land Office[4] and, if that Office's navigability determination is challenged, within the ambit of the courts.
Therefore, should the State Land Office make a claim to the subject property as a State-owned navigable water bottom, your questions related to the ownership of the roads would be moot, as all of the claimed property would vest in the sovereign ownership of the State (absent a successful challenge to such a claim). However, because the State Land Office has made no such claim, we now turn to your specific questions.
1. Who owns the lands shown in the dedicated streets?
The State Land Office records for the subject property show that the property was historically patented to private parties.[5] When property is privately owned, it may be given or dedicated for public road purposes. There is an important distinction between the two transmissions: given (or sold) and dedicated. If the roads were given or sold to a governmental entity, barring any reservation of rights to the contrary, the government may use the property as it sees fit, as it is the owner.[6] However, if the property was merely dedicated to a use as roads, ownership of the underlying property does not vest in the public entity charged with maintaining the roads. Rather, as we have opined on numerous occasions, all that the public entity holds is a right to use the roadbed for a road and nothing more.[7] Because of this important distinction, it is necessary to review the documents that actually created the streets in order to divine, as a factual matter, what was the nature of the transmission or dedication of these streets. We do *Page 4 
not have access to these documents, and, again, such a determination would be one of fact, which is beyond our authority on which to opine.
You note that the property has never been put to use for its intended purpose — the creation of a neighborhood. However, such a failure does not divest the original owners of their ownership rights where the property was merely dedicated and not sold (or given). Ownership is not lost through anything other than acquisitive prescription;[8] thus, regardless of the lack of use of the subject property, absent a determination that it has become a State-owned water bottom, the property remains in the ownership of the record owners.
2. In what ways may those lands be used? Specifically, can theirelevation be restored and can they be revegetated?
The answer to this question depends largely on the manner in which the roads are owned. If they are owned in fee title by a public entity, absent some reservation or limitation on that entity's use of the property, there is likely little restriction on the use of the property.[9] One exception to this maxim is that, if the State ultimately makes a claim to ownership of the subject property as a navigable waterway, restoring their elevation such that the bottoms emerge from the water may change the character of the land from eroded land to emergent land. As we have opined in the past, if once-eroded navigable water bottoms emerge from the water through restoration projects, the rights of the riparian (and possibly original title) owners may attach to the property, thus making it private once again, by operation of law.[10]
In the absence of fee ownership by a governmental entity or ownership as a navigable water bottom, the property, as noted above, is likely merely burdened with a right of public use or access for the purpose of terrestrial transport (i.e., roads). In this event, the use of the property would likely be restricted to what is explicitly stated in the dedication. Again, in the absence of such documentation, it is impossible to determine what those limitations may be.
3. Could they be used and managed as part of a carbon sequestrationprogram?
As with the answer to question two, supra, the answer to this question is dependant on who is ultimately determined to be the owner of the subject roads. As we have noted above, the ownership of the subject property, under Louisiana *Page 5 
law, carries with it the right to use the property in any lawful manner. It is our opinion that the decision to use the subject property for carbon sequestration rests with its owner.
Of further import to this question, we direct you to Act 193 of 2010,[11] which reads, in pertinent part, that:
 Any monetary compensation derived from the sequestration of carbon on the surface of land or water bottoms . . . is the property of the owner of the land or water bottom upon which such sequestration occurs, unless (a) contractually assigned to another party; or (b) the sequestration, uptake, or prevention of emission of greenhouse gases is directly related to the avoided conversion or avoided loss attributable to a project carried out or sponsored by the Coastal Protection and Restoration Authority including use of public resources as provided in R.S. 49:214.5.4. In such instance, the monetary compensation is the property of the state.
Under this provision, even if the Board comes to an agreement with the owner of the roads in the Triangle to operate a carbon sequestration operation thereon, absent an agreement to the contrary, any funds realized by such operation will inure to the land owner.
4. Assuming the lands shown as dedicated streets can be used inconnection with a wetland restoration project, are there restrictions onwho might conduct that work? Specifically, could the work be undertakenby the Sewerage and Water Board of New Orleans, the East Bank ProtectionAuthority, the Louisiana State Office of Coastal Protection andRestoration, and/or the Army Corps of Engineers?
We are aware of no restrictions regarding what entity might conduct wetland restoration work on the subject property, provided that the entity has the authority to conduct the project itself. If the property is ultimately determined to be State-owned, the question of which party could conduct such work would merely be limited by any agreements between the State and the entity tasked with performing the work. If the property is privately owned, any such work would depend on limits of a grant of access by the private landowner to the appropriate entity. Further, under La.R.S. 49:214.1, et seq., all integrated coastal protection projects and programs in the State of Louisiana come under the general oversight authority of the Coastal Protection and Restoration Authority and its implementation by the Office of Coastal Protection and Restoration. Therefore, it is recommended that any wetland restoration project in the area be conducted in coordination or consultation with both of those state entities in order to assure that any restoration project or program is consistent with the State's *Page 6 
Comprehensive Coastal Protection Master Plan and Annual Plans as established under La.R.S. 49:214.5.3.
We hope this sufficiently answers your inquiry; however, if we may be of further assistance please do not hesitate to contact our office.
 Sincerely yours,
 JAMES D. "BUDDY" CALDWELL ATTORNEY GENERAL
 BY: __________________________ RYAN M. SEIDEMANN Assistant Attorney General
 JC/RMS/tp
 cc: Mark S. Davis, Esq., Inst. on Water Res. Law 
Policy, Tulane University
[1] That the area that you have described in your opinion request corresponds to property within the following sections of Township
12 South, Range 12 East: 21, 22, 28, 54, 55, 66, 67, 69, 70, 71, and 72.
[2] This observation is made based upon a review of the 2008 aerial photographs of the subject area that are available through the State Land Office's interactive mapping Web site. Louisiana State Land Office Mapping Web Site, http://199.188.2.155/gis/statelands/viewer.htm (last accessed 12/07/10).
[3] Id.
[4] La.R.S. 41:1701.1(D).
[5] It appears from the State Land Office records that most of the subject property was acquired as swamp lands and was then patented by the State in the mid-1800s. A few parcels, however, appear to have been transferred directly from the federal government to private parties prior to State swamp lands selections.
[6] La.C.C. Art. 477 ("The owner of a thing may use, enjoy, and dispose of it within the limits and under the conditions established by law.").
[7] See e.g., La. Atty. Gen. Op. Nos. 08-0232; 08-0334.
[8] La.C.C. Art. 481. See also Brown v. Wood, 451 So.2d 569 (La. App. 2 Cir. 1984) (the nonuse of the property by its owner cannot amount to acquisitive prescription in favor of another party not actually in possession).
[9] La.C.C. Art. 477.
[10] This matter is complex and is largely beyond the scope of your opinion request and will not be discussed further here. For a complete analysis of this issue under the current law, we refer you to La. Atty. Gen. Op. No. 07-0137.
[11] Codified at La.R.S. 9:1103.